[File No. 6014.]

MARY FITZMAURICE, Respondent, v. THOMAS FITZMAURICE, Appellant.

(242 N. W. 526.)

192

Opinion filed April 30, 1932.

*Robert H. Bosard,* for appellant.

*J. E. Bryans, H. E. Johnson* and *Thomas F. Clifford,* for respondent.

NUESSLE, J.   This is an action brought by a wife to recover damages from her husband for personal injuries alleged to have been suffered by her because of his negligence.

The case was tried to a jury.   At the close of the plaintiff's case and

again at the close of the whole case, defendant moved for a directed verdict on the ground that the evidence failed to establish negligence on the part of the defendant; that the plaintiff was herself guilty of contributory negligence; and that an action by a wife to recover damages for personal injuries resulting on account of the negligence of her husband does not lie under the statutes of the state of North Dakota. This motion was resisted and denied. Plaintiff had a verdict. Thereafter defendant moved for judgment notwithstanding the verdict or for a new trial. This motion was denied and judgment was entered on the verdict. Hence this appeal.

In September, 1930, plaintiff accompanied her husband, the defendant, to town. He drove an automobile. On their return it was necessary to cross a line of railroad. As they approached the railroad from the south it was possible to see easterly along the track for a long distance, excepting for some five or six hundred feet just before they reached the track, whence the view to the east was obstructed by a grain elevator and by a string of box cars. At this crossing there were three tracks. First on the south, the house track, on which were the box cars, then a passing track, and last, to the north, the main track. The main track and the house track were about thirty-five feet apart. The defendant was driving at a rate of about twenty-five miles per hour. He drove past the box cars and discovered a gasoline propelled train approaching the crossing from the east. The operator of the train sounded a warning signal just as defendant passed the box cars. Before that neither defendant nor plaintiff had seen or heard the train. Plaintiff saw the approaching train first, screamed and called defendant's attention to it. It is inferable from the record that the defendant believed the train was approaching on the passing track and that he could cross ahead of it, so he increased the speed of his automobile. He reached the passing track and then discovered that the train was on the main track. It was too late to stop, so he continued across and the train hit the rear end of his car as it passed over the main track. The plaintiff was very severely injured. If either plaintiff or defendant had looked as they approached the crossing and before the view became obstructed they would have been able to see the approaching train. However, neither of them looked. Both were acquainted with the crossing. The train made very little noise and

of course no smoke arose from it. Defendant contends that under these circumstances it must be said, as a matter of law, either that there was no negligence on his part, or, though there was, that since the plaintiff had the same opportunity as he had to look and discover the approaching train and was acquainted with the crossing and knew the danger attendant on passing over it, she was, in any event, guilty of contributory negligence.

Questions of negligence and of contributory negligence are questions of fact for the jury unless there can be no reasonable division of opinion respecting them. Martin v. Parkins, 55 N. D. 339, 213 N. W. 574. It seems to us, that under the facts as disclosed in the instant case, both these questions were for the jury. Certainly the question of the defendant's negligence was. And it does not follow, as the defendant argues, that if he was negligent, plaintiff also must have been. Plaintiff as not driving. While she knew of the crossing and the possible dangers attendant on passing over it, she had no control of the automobile. She may have believed that after crossing the house track there would still be time to stop if there were any danger. So whether failure to look when she was more than five or six hundred feet from the crossing was negligence, was for the jury to determine. On the other hand, when she discovered the approaching train, she immediately called the defendant's attention to it. He apparently thought he could cross ahead of the train and attempted to do so. Possibly he then could have stopped had he tried to do so. Since plaintiff was not operating the automobile she cannot be charged with his fault. She called his attention to the train. She could do no more. Accordingly, these questions were properly submitted to the jury. This was the view that the trial court took and accordingly he refused to grant defendant's motion as based on those grounds.

But the principal ground urged by the defendant in the lower court, and the one on which he now chiefly relies, is that the plaintiff has no cause of action; that under the law of this state plaintiff, as the wife of the defendant, cannot recover against him on account of his negligence which resulted in her injury.

It is conceded that at common law the wife might not sue her husband in tort. "At the common law the husband and wife were regarded as one, . . . the legal existence of the wife during coverture being

merged in that of the husband, and, generally speaking, the wife was incapable of making contracts, of acquiring property or disposing of the same without her husband's consent. They could not enter into contracts with each other, nor were they liable for torts committed by one against the other." Thompson v. Thompson, 218 U. S. 611, 54 L. ed. 1180, 31 S. Ct. 111, 30 L.R.A.(N.S.) 1153, 21 Ann. Cas. 921. See also King v. Hanson, 13 N. D. 85, 99 N. W. 1085. In the absence of legislative enactment the common law is in effect in North Dakota. Comp. Laws 1913, §§ 4328, 4331. Plaintiff, however, insists that the legislature has spoken in this behalf and that the statute, § 4411, Comp. Laws 1913, providing,

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which the other might, if unmarried. The wife after marriage has with respect to property, contracts and torts the same capacity and rights and is subject to the same liabilities as before marriage, and in all actions by or against her she shall sue and be sued in her own name,"

clothes her with both the right and the capacity to recover damages against her husband on account of his torts. Section 4331 provides:

"In this state there is no common law in any case where the law is declared by the codes."

And plaintiff insists that pursuant to this statute and § 4411, supra, the common law rule is abrogated and must be wholly disregarded. While § 4411 does control, nevertheless in its construction and application some regard must be paid to the common law. "Manifestly civil statutes must be regarded as they have always been construed to be, but continuations, affirmances, modifications, or repeals of basic common law governing principles, and to be interpreted in the light of the common law as has been done for generations." Reeves & Co. v. Russell, 28 N. D. 265, 277, 148 N. W. 654, L.R.A.1915D, 1149.

While the question now presented is novel in this jurisdiction, it has been considered by the courts elsewhere many times. Counsel on both sides have searched diligently for precedent and authority to sustain their respective contentions and in that behalf have cited a multitude of cases. It would needlessly lengthen this opinion to enumerate all of these cases here, but they may be found cited in the

following cases and in the notes appended thereto. As sustaining the defendant's contention, are: Thompson v. Thompson, 218 U. S. 611, 54 L. ed. 1180, 30 L.R.A.(N.S.) 1153, 31 S. Ct. 111, 21 Ann. Cas. 921, supra; Peters v. Peters, 156 Cal. 32, 103 Pac. 219, 23 L.R.A. (N.S.) 699; Maine v. James Maine & Sons Co. 198 Iowa, 1278, 201 N. W. 20, 37 A.L.R. 161; Henneger v. Lomas, 145 Ind. 287, 44 N. E. 462, 32 L.R.A. 848; Dishon v. Dishon, 187 Ky. 497, 219 S. W. 794, 13 A.L.R. 625; Abbott v. Abbott, 67 Me. 304, 24 Am. Rep. 27; Bandfield v. Bandfield, 117 Mich. 80, 75 N. W. 287, 40 L.R.A. 757, 72 Am. St. Rep. 550; Strom v. Strom, 98 Minn. 427, 107 N. W. 1047, 6 L.R.A.(N.S.) 191, 116 Am. St. Rep. 387; Austin v. Austin, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388; Emerson v. Western Seed & Irrig. Co. 116 Neb. 180, 216 N. W. 297, 56 A.L.R. 327; Schultz v. Schultz, 89 N. Y. 644, reaffirmed (two judges dissenting) in Allen v. Allen, 246 N. Y. 571, 159 N. E. 656; Schubert v. August Schubert Wagon Co. 249 N. Y. 253, 164 N. E. 42, 64 A.L.R. 293; Lillienkamp v. Rippetoe, 133 Tenn. 57, 179 S. W. 628, L.R.A.1916B, 881, Ann. Cas. 1917C, 901; Tobin v. Golrich, 162 Tenn. 96, 34 S. W. (2d) 1058; Keister v. Keister, 123 Va. 157, 96 S. E. 315, 1 A.L.R. 439; Schultz v. Christopher, 65 Wash. 496, 118 Pac. 629, 38 L.R.A.(N.S.) 780. On the other hand, the plaintiff relies on Johnson v. Johnson, 201 Ala. 41, 77 So. 335, 6 A.L.R. 1031; Fitzpatrick v. Owens, 124 Ark. 167, 186 S. W. 832, 187 S. W. 460, L.R.A.1917B, 774, Ann. Cas. 1918C, 772; Bushnell v. Bushnell, 103 Conn. 583, 131 Atl. 432, 44 A.L.R. 785, 25 N. C. C. A. 719; Gilman v. Gilman, 78 N. H. 4, 95 Atl. 657, L.R.A.1916B, 907; Roberts v. Roberts, 185 N. C. 566, 118 S. E. 9, 29 A.L.R. 1479; Fiedler v. Fiedler, 42 Okla. 124, 140 Pac. 1022, 52 L.R.A.(N.S.) 189; Wait v. Pierce, 191 Wis. 202, 209 N. W. 475, 210 N. W. 822, 48 A.L.R. 276. It is sufficient to say that the earlier cases incline toward the strict rule of the common law, while the later cases, in the absence of controlling precedent, incline in the other direction. In any event, these cases all involve statutory construction and application. We have been unable to discover any other statute identical with our own. Accordingly, these authorities, both pro and con, are valuable only in so far as their reasoning is applicable in the construction of our statute.

Of course, in considering and applying the statute, our sole aim must

be to discover and carry out the legislative intent as expressed therein. We are not to be concerned with questions of policy except as the general policy of the law otherwise disclosed may aid us in doing this. Nor are we concerned with the wisdom or expediency of the statute. These are for the legislature. In this business of construction it will be worth while to note the history of our statutory law touching the capacity, rights, and obligations of married women respecting property, contracts and torts. The early territorial statutes gradually emancipated the wife from her husband's control. Chapter 38, Laws of Dakota, 1862, exempted her property from the debts of her husband. The first territorial civil code was passed and approved on January 12, 1866. Sections 75 to 85 inclusive, thereof, permitted the wife to hold, control, and dispose of her own property and to deal with others, including her husband, as though she were an unmarried woman. Nor was this legislation wholly one-sided. Both husband and wife as such were absolved from liability for the acts of the other. As to property, § 79 (Dakota Comp. Laws 1887, § 2590), expressly provided:

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, . . ."

In 1887 the territorial legislature further enacted chapter 98 of the Session Laws of 1887, found as § 2600 in the Dakota Compiled Laws 1887, providing:

"From and after the passage of this act, woman shall retain the same legal existence and legal personality after marriage as before marriage and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injury sustained to her reputation, person, property, character or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone; Provided, This act shall not confer upon the wife a right to vote or hold office, except as is otherwise provided by law."

The several statutory provisions above referred to continued in effect in this state after its admission into the Union until the Revised Codes of 1895 were adopted, and with the exception of §§ 2590 and 2600 were included therein. But these sections, 2590 and 2600, were omit-

ted in the revision and in lieu thereof § 2767, Revised Codes 1895, was enacted, providing:

"The wife after marriage has with respect to property, contracts and torts the same capacity and rights and is subject to the same liabilities as before marriage and in all actions by or against her she shall sue and be sued in her own name."

This section was in turn amended by chapter 100, Sess. Laws 1899, and as so amended now appears as § 4411, supra.

Thus the ever widening deviation from the common law is shown. First the exemption of the wife's property from the debts of her husband; then the enactment of a provision permitting her to hold, control and dispose of her own property and to deal with others, including her husband, respecting property as though she were unmarried and, conversely, absolving her husband from certain liabilities on her account theretofore imposed by the marriage relation; then a statute giving her a legal personality and clothing her with rights coequal with those of her husband respecting reputation, person, property and character, and the capacity to vindicate the same in her own name for her own benefit in the courts; and finally by the enactment of § 4411, supra, the statute under which the present question arises.

We know of no jurisdiction in which the strict rule of the common law with respect to the legal status of a married woman has not been modified or abrogated by statute. But while we have searched diligently we have found no other statute identical with our § 4411, supra. However, statutes exactly the same as § 2600, supra, have been enacted in other jurisdictions and have been construed and applied there. Thus in Strom v. Strom (1906) 98 Minn. 427, 116 Am. St. Rep. 387, 107 N. W. 1047, 6 L.R.A.(N.S.) 191, supra, the Minnesota court construed such a statute, saying: "This statute gives to a married woman the same right of action in her own name for any injuries sustained to her reputation, person, or property as her husband has in his own name to maintain an action for like injuries sustained by him, and no other or greater right. The purpose of the statute was to place the husband and wife on an equality as to actions by either for injuries to person, reputation, or property. The husband cannot, and never could, bring an action against his wife for a personal tort committed by her against him during coverture. It follows that the statute does not

authorize her to bring an action against him for a personal tort committed by him against her during coverture, for her rights in this respect are expressly limited by the statute to the rights which the law gives to him." See also Woltman v. Woltman, 153 Minn. 217, 189 N. W. 1022, 22 N. C. C. A. 418; State v. Arnold, 182 Minn. 313, 235 N. W. 373. But there have been more liberal interpretations. In Gillespie v. Gillespie (1896) 64 Minn. 381, 67 N. W. 206, Judge Mitchell, writing the opinion, said: "The obvious intent and effect of these statutory provisions is to preserve the separate legal existence of a married woman in respect to all her rights of person and property, and, to the extent necessary to the full exercise and protection of these rights, to give her in her own name all the remedies in the courts which she would have if unmarried." And in Fiedler v. Fiedler (1914) 42 Okla. 124, 140 Pac. 1022, 52 L.R.A.(N.S.) 189, supra, the Oklahoma court, construing a statute word for word the same, held that under it a married woman had the right to maintain an action for damages against her husband for a tortious injury inflicted by him during coverture.

Read by itself without regard for the common law, it seems to us that the language of § 4411, supra, can be susceptible of but one interpretation;—that a woman after her marriage shall have the same capacity and rights she had and be subject to the same liability she was subject to before her marriage. Read in the light of common law principles alone, however, there would be, to say the least, good room for argument to the contrary. This is attested by the formidable array of authorities cited above wherein statutes of a more or less similar character have been thus read and construed. But taking into consideration the growth and development of the idea of the emancipation of the wife and of the equality of husband and wife before the law as disclosed by the history of our legislative enactments, we hold that in this state the common law rule is wholly abrogated and that a wife may sue her husband for a personal tort. It seems to us that when the legislature saw fit to discard § 2600, Dakota Compiled Laws, 1887, supra, and adopt in its stead § 2767, Revised Codes 1895, later enlarged to § 4411, supra, the present statute, it unmistakably evidenced such a purpose and intent. Construed most strictly, § 2600, gave a married woman every right that her husband had with respect to person, repu-

tation, and property. Strom v. Strom, supra. But § 4411 does more than merely put a married woman on an equality with her husband with respect to person, reputation and property. It recognizes her legal individuality and preserves for her every right that she had prior to her marriage. As to whether it does likewise for her husband we are not now required to and do not decide.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.