[L. A. No. 24123.   In Bank.   Feb. 19, 1957.]

MARION WILDMAN et al. Appellants, v. GOVERNMENT EMPLOYEES' INSURANCE COMPANY (a Corporation), Respondent.

32

Swing, Scharnikow & Staniforth and Robert O. Staniforth for Appellants.

Luce, Forward, Kunzel & Scripps and James L. Focht, Jr., for Respondent.

Weinstock, Anderson, Maloney & Chase as Amici Curiae on behalf of Respondent.

CARTER, J.—Plaintiffs Marion Wildman and Elvaree Wildman, husband and wife, appeal from a judgment in favor of Government Employees' Insurance Company.

On February 3, 1955, Eusebio Bonifacio and Cecilia Bonifacio were the owners of a 1953 Cadillac coupe automobile. Plaintiff Elvaree suffered personal injuries and the property of both plaintiffs was damaged, on February 3, 1955, as the result of the negligent operation of the Cadillac which, at the time of the accident, was being operated by Victoria Villaneuva with the permission and consent of the Bonifacios. Plaintiffs obtained a judgment, which is now final, against Victoria Villaneuva and Cecilia Bonifacio in the sum of $5,000 and costs in the sum of $66.90. The judgment is unsatisfied and the Bonifacios are insolvent.

Prior to the time of the accident defendant insurance company had issued to Eusebio Bonifacio a policy of insurance. Plaintiffs brought an action in declaratory relief to

obtain a declaration of the legal rights and duties of the defendant insurance company under the policy and for a judgment requiring it to pay the judgment theretofore obtained by plaintiffs against Cecilia Bonifacio. The trial court concluded that plaintiffs take nothing by their complaint and entered judgment to the effect that the insurance afforded by the defendant's policy did not cover the accident.

Plaintiffs contend that the restrictive endorsement on the policy is ambiguous. Under the terms of the insurance policy involved, defendant agreed to indemnify Eusebio Bonifacio and Cecilia Bonifacio against any liability not exceeding the sum of $10,000, together with taxed court costs and interest which might arise against Eusebio and Cecilia in favor of any person or persons who should sustain any damage to their persons or property by reason of an accident incurred while Eusebio or Cecilia were using the automobile or legally responsibile for the use thereof, provided the use was with the consent and permission of Eusebio or Cecilia. An endorsement was attached to the policy, dated December 3, 1954, and provided:

"1. The first sentence of Insuring Agreement III, Definition of Insured, is eliminated and is hereby replaced by the following:

"With respect to the insurance for Bodily Injury Liability and Property Damage Liability the unqualified word 'insured' includes the named insured, the individual named below, and any member of the insured's immediate family

No Exceptions

while using the automobile or legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured.

"2. Such insurance as is afforded by this policy does not apply while any person not an insured as defined in Paragraph 1 above is using the automobile, except that such insurance as is afforded for Medical Payments applies with respect to bodily injury to or sickness, disease or death of the named insured, the individual named below, and any member of the insured's immediate family.

"3. As evidenced by the signature below of the named insured, the named insured acknowledges and agrees that this endorsement forms a part of the above captioned policy issued by the Government Employees Insurance Company and is effective as of 12:01 A.M. Standard Time on the effective date of the endorsement."

Defendant contends that the endorsement controls, is unambiguous, and provides coverage only when the automobile in question is driven by the insured or one of his immediate family.

We agree with plaintiffs that the endorsement is ambiguous. If the words "No EXCEPTIONS" were not present, the policy would read as follows: "the unqualified word 'insured' includes the named insured, the individual named below, and any member of the insured's immediate family while using the automobile or legally responsible for the use thereof, *provided the actual use of the automobile is with the permission of the named insured.*" (Emphasis added.) Paragraph 2 provides that the policy does not apply while any person not an insured as defined in Paragraph 1 is using the car "except that" the provision for medical payments applied to the named insured and members of his immediate family. The question is, to what do the words "No EXCEPTIONS" relate? Immediately following the words "No EXCEPTIONS" comes the statement "while using the automobile or legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured." It appears that the "no exceptions" applies to the named insured and members of his immediate family while any of them were using the automobile or had consented and permitted its use by someone else. The phrase referring to use with consent and permission would, otherwise, have no effect whatsoever inasmuch as Eusebio, Cecilia and members of their immediate family were directly covered by the policy in the first part of paragraph 1. "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1955), *supra,* 45 Cal.2d 81, 83 [286 P.2d 816]; *Coit* v. *Jefferson Standard Life Ins. Co.* (1946), *supra,* 28 Cal.2d 1, 3 [168 P.2d 163, 168 A.L.R. 673]; 5 Am.Jur. 790, § 507.) If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. (*Fageol T. & C. Co.* v. *Pacific Indem. Co.* (1941), 18 Cal.2d 748, 751 [117 P.2d 669].) If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against (*Fageol T. & C. Co.* v. *Pacific Indem. Co.* (1941), 18 Cal.2d 731, 746-747 [16, 17]

[117 P.2d 661] ; *Ocean etc. Corp., Ltd.* v. *Industrial Acc. Com.* (1924), 194 Cal. 127, 132 [228 P. 1] ; *Miller* v. *United Ins. Co.* (1952), 113 Cal.App.2d 493 [248 P.2d 113] ; *Pendell* v. *Westland Life Ins. Co.* (1950), 95 Cal.App.2d 766, 770 [214 P.2d 392] ; see also *Christoffer* v. *Hartford Acc. etc. Co.* (1954), 123 Cal.App.2d Supp. 979 [267 P.2d 887]), the amount of liability (*Hobson* v. *Mutual Benefit H. & A. Assn.* (1950), 99 Cal.App.2d 330, 333 et seq. [221 P.2d 761] ; see also *Narver* v. *California State Life Ins. Co.* (1930), 211 Cal. 176, 180 et seq. [294 P. 393]) or the person or persons protected (*Olson* v. *Standard Marine Ins. Co.* (1952), 109 Cal.App.2d 130, 135 [1, 5] [240 P.2d 379] ; see also *Island* v. *Fireman's Fund Indem. Co.* (1947), 30 Cal.2d 541, 543, 548 [184 P.2d 153, 173 A.L.R. 896] ; *Sly* v. *American Indem. Co.* (1932), 127 Cal.App. 202 [15 P.2d 522]), the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437, 438 [296 P.2d 801].)

In the case under consideration the ambiguous words are "no exceptions." Webster's New International Dictionary defines "exception" as an exclusion or taking out by exception something that would otherwise be included. ██ Inasmuch as use by another with the consent and permission of the insured is specifically set forth later in the same paragraph the words "no exceptions" can hardly be construed to apply to that situation. Paragraph 2 provides that the medical payments provided for in the policy apply only when bodily injury or sickness or death is suffered by the named insured or any member of his immediate family. It appears that paragraphs 1 and 2 cannot be reconciled insofar as coverage is concerned. ██ Finding II of the trial court (Cl. Tr. 12) is inconsistent in itself. In that finding the court found that the defendant agreed to "indemnify the said Eusebio P. Bonifacio and Cecelia Bonifacio against any liability not exceeding the sum of $10,000.00, together with taxed court costs and interest, which should arise against the said Eusebio P. Bonifacio or Cecelia Bonifacio in favor of any person or persons who should sustain any damage to their property and also in favor of any person or persons who should sustain any bodily injuries by reason of an accident occurring while the said Eusebio P. Bonifacio or Cecelia Bonifacio were using the said automobile *or legally responsible for the use thereof, provided such use was with the permission and consent of the said Eusebio P. Bonifacio or Cecelia Bonifacio,* and *pro-*

*vided further that said automobile was not being used at said time by any person other than the said Eusebio P. Bonifacio or Cecelia Bonifacio* or members of their immediate family. . . ."" (Emphasis added.) It is apparent from this finding that the coverage afforded by the policy cannot apply two ways at the same time: it cannot apply *only* when one of the named insureds, or members of their immediate family, are using the car and also when someone else is driving with the consent and permission of the insured. ▄▄ The insurer, having caused the uncertainty and ambiguity which exists in the policy under consideration, must have that ambiguity and uncertainty resolved against it under the well settled rule in this state and elsewhere. (See *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437, 438 [296 P.2d 801], heretofore quoted, and cases cited therein.) "The language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* at page 438.) ▄▄ With these rules in mind the policy must be construed as extending coverage to persons suffering bodily injury or property damage caused by the vehicle in question when it was being driven by the named insured, or members of their immediate family, and also by someone else driving the vehicle with the consent and permission of the named insured. It follows from what we have said that the trial court erred in concluding that the policy in question "did not apply at the time of the accident on February 3, 1955, when Victoria Villanueva was driving the Cadillac automobile owned by Eusebio P. Bonifacio and Cecelia Bonifacio.""

Plaintiffs also contend that if the policy in question does not apply when the automobile covered is being driven by someone other than the insured persons but with the consent and permission of the insured that it violates the provisions of section 415 of the Vehicle Code. That section, which is entitled "Contents and Requirements of motor vehicle liability policy" provides as follows:

"Requisites of Motor Vehicle Liability Policy.

" (a) [*Motor vehicle liability policy defined; requirements.*] A 'motor vehicle liability policy,' as used in this code means a policy of liability insurance issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured, which policy *shall* meet the following requirements:

" (1) Such policy shall designate by explicit description

or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted.

"(2) Such policy shall insure the person named therein *and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured.*" (Emphasis added.)

■ Defendant insurance company argues that it had the right to limit its coverage in a policy of insurance issued by it "and when it has done so, the plain language of the limitation must be respected." (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d at page 432.) Defendant's argument is without merit. In the Continental Casualty Company case, the restrictive endorsement defined the vehicles covered by the policy. It was held not to apply to the coverage on the authorized vehicles and hence could not apply to the drivers thereof.

The policy involved here provides, under the heading "CONDITIONS" in section 8 that "Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." In section 23, also under the heading "CONDITIONS" it is stated "Terms of Policy Conformed to Statute. Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes."

No case construing section 415 of the Vehicle Code as it relates to the circumstances here present has been cited to us, nor has independent research revealed one.* In *Northwest Cas. Co.* v. *Legg,* 91 Cal.App.2d 19, 24 [204 P.2d 106], the court said: "Section 415 is a part of the Financial Responsibility Law. As such, it is directly related to the

---

*The question here presented was not determined by this court in *Norris* v. *Pacific Indem. Co.*, 39 Cal.2d 420 [247 P.2d 1]; *Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861].

matter of suspending and reinstating operators' licenses in connection with proving ability to respond in damages for injuries caused to others. *Whether or not these provisions are controlling with respect to the contract which an insurer may make with an insured, and their relation to the provisions and requirements contained in the Insurance Code, need not be here decided.''* (Emphasis added.) ▆ It appears that section 415 must be made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles. Section 402 of the Vehicle Code provides that ''Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages.'' ▆ We are of the opinion that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 and 415 of the Vehicle Code. In *Malmgren* v. *Southwestern Auto. Ins. Co.,* 201 Cal. 29, 33, 34 [255 P. 512], an analogous situation was involved. The insurance carrier sought to avoid liability on the ground that its liability did not accrue under the policy until an execution issued upon the judgment obtained against the assured, or judgment debtor, was returned unsatisfied by reason of the insolvency or bankruptcy of the assured. At that time the law of this state (Stats. 1919, p. 776) provided that every policy of insurance should contain a provision that the insolvency or bankruptcy of the insured person should not release the carrier for the payment of damages sustained. The court said: ''The statute of this state, which is the final word on this issue, does not make the return of the execution unsatisfied a prerequisite to the commencement of an action upon the policy. . . . The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith. The statute is founded upon principles of public policy and an anomalous situation would be created if the rights of third parties, for

whose protection the law was adopted, could be hindered, delayed, or defeated by the private agreements of two of the parties to a triparty contract." (See also to the same effect, *Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743, 747 [7 P.2d 999, 85 A.L.R. 13]; *Belt Cas. Co.* v. *Furman*, 218 Cal. 359, 363 [23 P.2d 293]; *Western Mach. Co.* v. *Bankers Indem. Ins. Co.*, 10 Cal.2d 488, 492 [75 P.2d 609]; *Olds* v. *General Acc. Fire etc. Corp.*, 67 Cal.App.2d 812, 822 [155 P.2d 676]; *Bias* v. *Ohio Farmers Indem. Co.*, 28 Cal.App.2d 14, 16 [81 P.2d 1057]; *Pigg* v. *International Indem. Co.*, 86 Cal.App. 671, 673 [261 P. 486].)

Inasmuch as sections 402 and 415 of the Vehicle Code set forth the public policy of this state such laws must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof. We have here, however, a policy containing a clause which provides that the insurance afforded by the policy *shall* comply with the provisions of the motor vehicle financial responsibility law "of any state . . ." wherein the liability arising out of the ownership, maintenance or use of the automobile may occur.

We conclude that the restrictive endorsement hereinbefore set forth and discussed is ambiguous; that the construction thereof urged by defendant insurance carrier would be violative of the sections of the Vehicle Code heretofore discussed; and that said sections were intended by the Legislature to be, and are, a part of every policy of motor vehicle liability insurance issued by an insurance carrier authorized to do business in this state.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.

Spence, J., and McComb J., concurred in the judgment.

Respondent's petition for a rehearing was denied March 20, 1957. Spence, J., and McComb, J., were of the opinion that the petition should be granted.