[Civ. No. 41176. First Dist., Div. Four. Jan. 30, 1978.]

KEVIN GRUBB et al., Plaintiffs and Appellants, v.
RANGER INSURANCE COMPANY, Defendant and Respondent.

■■■■■■■■■■■■■■■■■■

## Counsel

Walkup, Downing, Shelby, Bastian, Melodia, Kelly & O'Reilly and Terence J. O'Reilly for Plaintiffs and Appellants.

Neil D. Reid and Peter Axelrod for Defendant and Respondent.

## Opinion

**CALDECOTT, P. J.**—This is an appeal from a judgment entered pursuant to order granting respondent's motion for summary judgment. The underlying cause of action arose on August 26, 1968, when a light aircraft owned by San Jose Flying Jaguars, and piloted by a member of that club, Frank Denham, crashed near Cottage Grove, Oregon. Jeannette Grubb, mother of plaintiffs and appellants, Kevin Grubb, Keith Grubb, Corrina Grubb and Theresa Grubb, was killed in that accident. Denham was also killed.

Before the accident, Jaguars had purchased a policy of insurance from defendant and respondent Ranger Insurance Company. The policy provided coverage for bodily injury liability, excluding passengers.

In April 1970, appellants brought a wrongful death action against both Jaguars and the Denham estate. Respondent received notice of the action from both defendants, and formally refused to provide a defense or coverage on the ground that the policy did not cover passengers. Thereafter, both Jaguars and the Denham estate defaulted and a judgment was entered against Jaguars alone. The judgment remains unsatisfied.

On December 12, 1973, appellants filed an action against respondent for the full amount of the unsatisfied judgment against Jaguars, and for additional punitive damages. Subsequently, Jaguars brought a separate

action against respondent, also seeking coverage under the policy in the amount of the judgment and punitive damages. These actions were consolidated. Respondent filed a motion for summary judgment which was granted.

I

The Ranger Insurance policy obtained by Jaguars and in effect at the time of the accident provided coverage for bodily injury liability, *excluding passengers,* with limits of $100,000 per person, $300,000 per occurrence. Although passenger bodily injury liability insurance was available, it was not purchased by Jaguars. Appellants nevertheless contend that Santa Clara County Ordinance NS-815 overrides this passenger exclusion provision. They argue that the ordinance is a part of the insurance contract, and that it requires minimum bodily injury liability insurance for passengers in the amount of $100,000.

Generally, all applicable laws in existence when an agreement is made necessarily enter into the contract and form a part of it, without any stipulation to that effect, as fully as if they were expressly referred to and incorporated in its terms. (*Alpha Beta Food Markets* v. *Retail Clerks* (1955) 45 Cal.2d 764, 771 [291 P.2d 433].) This principle embraces local ordinances as well as state statutes. (*Cappelmann* v. *Young* (1946) 73 Cal.App.2d 49, 52 [165 P.2d 950]; *Equitable B. & L. Assn.* v. *Wolfangle* (1931) 111 Cal.App. 119, 123 [295 P. 388].) When a term of an insurance contract is in conflict with applicable laws, such terms are ineffective.[1] (*Malachowski* v. *Varro* (1926) 76 Cal.App. 207, 213 [244 P. 936]; *Grier* v. *Ferrant* (1944) 62 Cal.App.2d 306, 313-314 [144 P.2d 631]; *Connell* v. *Clark* (1948) 88 Cal.App.2d 941, 950 [200 P.2d 26].)

Respondent Ranger Insurance Company contends that the ordinance was directed at aircraft owners, and therefore does not bind the insurance company that issued the policy subject to the ordinance. This contention is without merit. In *Grier* v. *Ferrant, supra,* 62 Cal.App.2d 306, a city ordinance required that every *owner* of a taxicab file and keep in full force and effect a policy of public liability insurance. The insurance company argued that the ordinance did not bind the insurer. This argument was rejected by the reviewing court, which held ". . . that under provisions such as are contained in the municipal

---

[1] In apparent recognition of this principle, condition 24 of the Ranger policy provided: "Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes."

ordinance now under consideration, plaintiff was authorized to join respondent insurance company as a party defendant with its insured [citations]." (*Grier v. Ferrant, supra,* 62 Cal.App.2d at pp. 313-314.)

## II

The county ordinance was thus a part of the insurance policy, but the question remaining is whether the ordinance required passenger coverage.

On its face, the ordinance does not require liability coverage for bodily injury sustained by passengers. Nor was there any evidence that the county interpreted the ordinance to impose such a requirement. To the contrary, it appears from the record that the Ranger policy obtained by Jaguars was satisfactory to the county. In fact, it appears from a reading of the entire ordinance, that its only purpose is to benefit and protect the county, not the users of the airport. This is emphasized in the first paragraph of section 3.7.4-1,[2] which specifically provides that the privilege of using the airport is conditioned upon the assumption of full responsibility and risk by the user of the airport and the county shall not be liable for any accident occurring on the airport. The second paragraph of the section contains the requirement of insurance by users and supports the construction that the insurance is required to protect the county alone. There is no indication that the ordinance was intended to govern the operation or use of aircraft away from the airport and the only reference to accidents is to those occurring on the airport. We thus conclude that the ordinance does not require passenger insurance coverage and particularly was not intended to cover accidents occurring in another state.

---

[2]"3.7.4-1: Airport Liability.

"The privilege of using the airport and its facilities shall be conditioned upon the assumption of full responsibility and risk by the user thereof; and the County of Santa Clara, its agents and employees shall not be liable for loss, damage or injury to persons or property arising out of any accident, incident or mishap of any nature whatsoever or from any cause whatsoever to any individual, aircraft or property occurring on the airport or in the use of any of the airport facilities.

"3.7.4-2: Insurance Required.

"No person shall maintain based aircraft at the airport unless such proprietor shall file with the Director of Public Works and the Clerk of the Board of Supervisors, and keep in current effect, a certificate of public liability and property damage insurance executed by a company authorized to carry on insurance business in this State, insuring coverage in the following minimum amounts:

| "Airplane Gross Weight | B.I. |
|---|---|
| 0 - 2,000 lbs. | $ 50,000/$100,000 |
| Over 2,000 lbs. | 100,000/$300,000 |

## III

■ In the alternative, appellants contend that the provision excluding coverage for passengers is in violation of a public policy analogous to that which has been recognized in the past in connection with automobile liability insurance. They rely upon *Wildman v. Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], wherein the California Supreme Court held that an insurer's attempt to exclude permissive users from *automobile* liability insurance protection was contrary to public policy and therefore invalid. However, *Wildman* and its progeny speak in the context of a statutory scheme which expressly requires certain coverage to be included in every automobile insurance policy. As the Supreme Court observed in *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 387 [131 Cal.Rptr. 42, 551 P.2d 362]: "The public policy identified and relied on by us in *Wildman* was gleaned from former sections 415 and 402 of the Vehicle Code (see present Veh. Code, §§ 16450, 17150, respectively) and we stressed the significance of those provisions of section 415 which specifically required that any policy of automobile liability insurance contain coverage for permissive use of the automobile by others. Section 402, in turn, expressly fastened liability on the owner for the negligent operation by a permissive user. (At present, coverage for acts of permissive users is required of an automobile liability insurance policy by virtue of Ins. Code, § 11580.1, enacted in 1970, and Veh. Code, § 16451.)"

The automobile financial responsibility law considered in *Wildman* and subsequent cases, is remedial in nature and in the public interest. It was therefore liberally construed to the end of fostering its objectives. (See *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].) ■ However, when statutes governing the content of an insurance policy permit a limitation or exclusion, the validity of such exclusion cannot be questioned. (*Aas v.*

---

"Airplane Gross Weight                                                 P.D.
0 - 2,000 lbs.  $20,000
Over 2,000 lbs.  $50,000
"Article 5: Liability
"3.7.5-1: Assumption of Liability
"The privileges of using the airport and its facilities shall be conditioned upon the assumption of full responsibility, liability and risk by the user thereof; and the County of Santa Clara, its agents and employees shall not be liable for loss, damage or injury to persons or property arising out of any accident, of any nature whatsoever, or from any cause whatsoever, including, but not limited to, fire, theft, vandalism, wind, flood, earthquake collision or Act of God."

*Avemco Ins. Co.* (1976) 55 Cal.App.3d 312, 322 [127 Cal.Rptr. 192]; see Ins. Code, § 11580.1; cf. § 11584.)

In contrast to the statutory scheme considered by the Supreme Court in *Wildman,* there was no statutory expression of a public policy mandating insurance coverage for aircraft passengers at the time of the airplane crash. To the contrary, at the time of the accident, August 26, 1968, the Legislature had already passed and the Governor had signed the bill adopting the Uniform Aircraft Financial Responsibility Act (Pub. Util. Code, § 24230 et seq.)[3] The act was not effective until the following January 1. However, in view of the fact that the act had been adopted and would be effective in some four months, it cannot be said that public policy in California prohibited such a provision in an insurance policy.

Under these circumstances, it is apparent that there has never been legislative or other policy requiring that insurance be furnished to cover the aircraft owner's or operator's liability for damages for injury or death suffered by a passenger riding in the aircraft. It is therefore not appropriate to rewrite the policy here in issue to create such a liability.

The judgment is affirmed.

Rattigan, J., and Rothenberg, J.,* concurred.

---

[3]The act expressly permits exclusion of nonpaying passengers in aircraft liability policies.

*Assigned by the Chairperson of the Judicial Council.