**RLI INSURANCE COMPANY,**
**Plaintiff and Appellant,**

v.

**Jennifer Chester HELING, individually and as Personal Representative of the Estate of Michael L. Heling, Deceased, Defendant and Appellee.**

Civ. No. 940065.

Supreme Court of North Dakota.

Aug. 24, 1994.

William P. Harrie (argued), of Nilles, Hansen & Davies, Ltd., Fargo, for plaintiff and appellant.

Charles T. Hvass, Jr. (argued), of Hvass, Weisman & King, Minneapolis, MN, and Alvin O. Boucher (appearance), of Robert Vogel Law Office, PC, Grand Forks, for defendant and appellee.

LEVINE, Justice.

Under N.D.R.App.P. 47, the United States District Court for the District of North Dakota, Southeastern Division, has certified to this court the following question of law:

"Is a spousal exclusion clause in an aircraft liability insurance policy valid and enforceable under the statutes and public policy of the State of North Dakota?"

We answer the question in the affirmative.

Michael L. Heling and his spouse, Jennifer Chester Heling, were the registered owners of a 1964 Piper PA30 aircraft insured by RLI Insurance Company (RLI). On March 28, 1991, Michael was piloting the aircraft when it crashed near Butte, Montana. Michael died from injuries he received during the accident, and Jennifer, a passenger in the aircraft, was seriously injured.

Jennifer sued Michael's estate in state court seeking compensation for her injuries. RLI later commenced an action in federal court requesting a declaratory judgment that: (1) the RLI aviation insurance policy does not provide liability coverage under the circumstances; and (2) RLI is not obligated to provide a defense for Jennifer's state court action against Michael's estate.

RLI moved for summary judgment, arguing that its aviation insurance policy issued to Michael unambiguously excluded liability coverage for bodily injury to Jennifer. Section 1 of the policy, titled "LIABILITY PROTECTION," provides:

"D. Single Limit—This is a combination coverage which protects *you* or any *permissive user* for *your* or their legal responsibility for both *bodily injury* and *property damage*. It will also include protection for *your* or their legal responsibility for *bodily injury* to *passengers* in the insured aircraft if *you* have chosen to buy that additional coverage." [Emphasis in original].

The policy further provides, under the heading, "WHAT IS NOT INSURED IN THIS SECTION—," that: "4. The policy does not insure for any *bodily injury* to *you*." [Emphasis in original]. The policy definition of "you" is contained in section 5 of the document:

"*You, Your* and *Yours* means the persons or organizations who are named in Item 1 on *your* Insurance Coverage Schedule. These words also include the spouse of any person named in Item 1 if that spouse resides in the same household as the person...." [Emphasis in original].

RLI contended that because Michael is the person named in Item 1 of the insurance policy, Jennifer, as Michael's spouse, is included in the definition of "you" in section 5. Thus, RLI asserted that Jennifer's bodily injuries are not covered because subsection 4 states that the "policy does not insure for any *bodily injury* to *you*." [Emphasis in original]. Jennifer responded that the policy's exclusion prohibiting the insured's spouse from recovering for her personal inju-

ries is contrary to the public policy of this State. The federal court found that North Dakota law governed the action and certified the question of law to this court.

Jennifer presents a two-pronged argument to attack the insurance policy's spousal exclusion. She asserts that the exclusion contravenes public policy because it discriminates against married women in violation of N.D.C.C. § 14–07–05, and it illegally excludes coverage for the spouse in an accident involving a "motor vehicle," as defined by N.D.C.C. Title 39. We reject both contentions.

## I

Section 14–07–05, N.D.C.C., provides:

"*Rights and liabilities of married person.* Any person after marriage has with respect to property, contracts, and torts the same capacity and rights and is subject to the same liabilities as before marriage, including liability to suit by his or her spouse. In all actions by or against a married person, the married person shall sue and be sued in one's own name."

■ In *Fitzmaurice v. Fitzmaurice*, 62 N.D. 191, 242 N.W. 526, 529 (1932), this court construed the predecessor statute to § 14–07–05 [1] as authorizing a wife to sue her husband for a personal tort, thus abrogating the common law doctrine of interspousal immunity. *See Mager v. Mager*, 197 N.W.2d 626, 627 (N.D.1972); *Nuelle v. Wells*, 154 N.W.2d 364, 366 (N.D.1967). Jennifer claims that § 14–07–05, and the broad interpretation given its predecessor by the *Fitzmaurice* court, evidences a strong public policy banning "any attempt at distinguishing the rights and capacities of a woman based on marital status." According to Jennifer, in order to give the statute and its underlying policy their "in-

tended effect," we should declare the RLI spousal exclusion invalid. We disagree.

■ The insurance policy, like the statute, is gender neutral. Section 14–07–05 ensures that married persons retain all of the rights they enjoyed before marriage, including the right to contract. Jennifer has not been denied any contractual right to be insured on the basis of her marriage. Michael entered into the insurance contract which excludes coverage otherwise available to an insured for a suit brought against that insured by a spouse.[2] The question is whether RLI must provide coverage to the insured being sued, Michael's estate, for a tort action brought by a spouse.

■ Jennifer's argument appears to be that the spousal exclusion undercuts the public policy underlying the abrogation of interspousal immunity. Generally, however, absent legislative or constitutional mandates evidencing a contrary public policy, *see Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574, 580 (N.D.1993), private parties are free to decide what insurance coverage they want and will pay for, and insurance companies are free to decide what risks to undertake and what risks to reject. *See, e.g., State Farm Fire & Cas. Co. v. Clendening*, 150 Cal.App.3d 40, 197 Cal.Rptr. 377, 378 (1983); *American Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983); *Neil v. Allstate Ins. Co.*, 379 Pa.Super. 299, 549 A.2d 1304, 1307 (1988); *Faraj v. Allstate Ins. Co.*, 486 A.2d 582, 585 (R.I.1984). Neither this court's decision in *Fitzmaurice*, nor § 14–07–05, purports to determine the scope of a contract between an insured and an insurer; rather, they authorize a spouse to sue the other spouse in tort. The right of one spouse to sue the other does not require insurers to provide protection so that there may actually be a source of funds to respond

1. Section 4411 of the North Dakota Compiled Laws of 1913 provided:
   "*Rights and capacity of husband and wife.* Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which the other might, if unmarried. The wife after marriage has with respect to property, contracts and torts the same capacity and rights and is subject to the same liabilities as

before marriage, and in all actions by or against her she shall sue and be sued in her own name."

2. We were informed during oral argument that, although RLI does not offer a policy that would cover Jennifer's bodily injuries under these circumstances, other insurance companies in the marketplace do offer such coverage.

to tort claims no longer shielded by immunity. *See, e.g., Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1099 (Ind.1985); *Allstate Ins. Co. v. Elwell,* 513 A.2d 269, 273 (Me.1986); *Hahn v. Berkshire Mut. Ins. Co.,* 28 Mass. App.Ct. 181, 547 N.E.2d 1144, 1145 (1989). In *Porter v. Farmers Ins. Co. of Idaho,* 102 Idaho 132, 627 P.2d 311, 315 (1981), the Idaho Supreme Court addressed the fallacy of the argument:

> "[T]he right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries. The fact that there is or is not an insurance policy in force covering an accident does not affect the right of one spouse to sue and obtain a judgment against the other spouse."

We agree with the rationale of *Porter* and with those courts that hold that the exclusion of a spouse or other family member from insurance coverage does not frustrate the public policy against immunity for interspousal or intrafamily torts. *See, e.g., RLI Ins. Co. v. Kary,* 779 F.Supp. 1300, 1303 (D.Ct.Kan.1991); *Clendening, supra; Boles, supra; Elwell, supra; Hahn, supra; Ryan, supra; Foley v. Foley,* 173 N.J.Super. 256, 414 A.2d 34, 35 (1980); *Suba v. State Farm Fire and Cas. Co.,* 114 A.D.2d 280, 498 N.Y.S.2d 656, 658 (1986); *Neil, supra; Faraj, supra.* The spousal exclusion does not deprive Jennifer of her right to bring a lawsuit because she may still sue Michael's estate and recover from available assets.

We conclude that the spousal exclusion does not violate the public policy expressed in *Fitzmaurice* and § 14–07–05.

## II

Relying on *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870 (N.D. 1975), Jennifer asserts that the spousal exclusion is contrary to public policy because it excludes coverage we have already required to be provided for a spouse in an accident involving a "motor vehicle," as defined in N.D.C.C. Title 39. We disagree.

In *Hughes, supra,* 236 N.W.2d at 885, this court held that a " 'household, or family, exclusion clause' contained in a policy of motor vehicle liability insurance issued and delivered in this State is void as violative of public policy and the statutes of this State." *Hughes* involved a recreational vehicle policy covering a snowmobile. The wife, a passenger on a snowmobile driven by her husband, sued her husband and the driver of another snowmobile for injuries she suffered from a collision. The family exclusion clause in the policy excluded coverage for the wife's injuries. This court concluded that: a snowmobile is a "motor vehicle" under N.D.C.C. Title 39; the policy was a "motor vehicle liability policy" subject to the financial responsibility laws which were enacted to protect innocent victims of motor vehicle accidents from financial disaster; and:

> "A 'motor vehicle liability policy' must provide coverage which insures all permissive operators against loss from liability, within certain minimum monetary limits, for damages imposed by law. Such mandatory 'Omnibus Clause' coverage is a clear legislative expression of public policy."

*Hughes, supra,* 236 N.W.2d at 873, Syllabus 11. Thus, we found the family exclusion clause in *Hughes* to be contrary to public policy because it failed to meet the minimum coverage required by our financial responsibility laws. *See* N.D.C.C. Chapters 39–16 and 39–16.1.

In order to transpose the *Hughes* rationale to her case, Jennifer first must convince us that an aircraft is a "motor vehicle" within the meaning of Title 39. We are not persuaded.

The purpose of Title 39 is to regulate the "highway system" and "highway transportation." N.D.C.C. § 39–01–01.1. A "motor vehicle" includes "every vehicle which is self-propelled, every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, and, for purposes of motor vehicle registration, title registration, and operator's licenses, motorized bicycles." N.D.C.C. § 39–01–01(38). A "vehicle" is further defined as including "every device in, upon, or by which any person or property may be transported or drawn upon a public highway, except devices

moved by human power or used exclusively upon stationary rails or tracks." N.D.C.C. § 39–01–01(88). When we construe these statutes in a manner that an ordinary person reading them would, to get from them the usual, accepted meaning, *see Wills v. Schroeder Aviation, Inc.,* 390 N.W.2d 544, 545–546 (N.D.1986), we conclude that an aircraft is neither a "motor vehicle" nor a "vehicle."

Generally, "[a]n airplane is in a class by itself. It has usually been held, in the absence of any express provision on the subject calling for a different conclusion, not to be within the terms 'vehicle,' 'motor vehicle,' 'vessel,' or the like." 8 Am.Jur.2d *Aviation* § 21, at p. 366 (1980) [footnotes omitted]. The United States Supreme Court, in *McBoyle v. United States,* 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931), considered whether an airplane was covered by a statutory definition of a motor vehicle. Concluding that an airplane was not intended to be included, the Court reasoned:

> "For after including automobile truck, automobile wagon and motor cycle, the words 'any other self-propelled vehicle not designed for running on rails' still indicate that a vehicle in the popular sense, that is a vehicle running on land is the theme. It is a vehicle that runs, not something, not commonly called a vehicle, that flies....
> "When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used."

*McBoyle, supra,* 283 U.S. at 26, 27, 51 S.Ct. at 341.

We agree with this reasoning. The term "motor vehicle" does not conjure visions of aircraft in the ordinary person's mind. Moreover, the legislature differentiates between aircraft and motor vehicles when it is of a mind to. *See, e.g.,* N.D.C.C. §§ 12.1–23–06(1); 20.1–01–11; and 39–01–08(1). Aeronautics and aircraft are governed by N.D.C.C. Title 2. To construe the definition of "motor vehicle" so broadly as to include aircraft disregards the commonly understood meaning of the term. Accordingly, we conclude that an aircraft is not a "motor vehicle" for purposes of Title 39. *See also Automobile Club Ins. Ass'n v. LaPointe,* 843 F.2d 964, 967 (6th Cir.1988) (airplane which crashed into insured's car not a "motor vehicle" within meaning of Michigan no-fault indemnification provisions); *Certain British Underwriters v. Jet Charter,* 789 F.2d 1534, 1537 (11th Cir.1986) (aircraft is not "vehicle" within meaning of an exception to an exclusionary clause contained in airport owners and operators liability insurance policy); *First Bank and Trust Co. of Princeton, Ky. v. Feuquay,* 405 F.2d 990, 992 (6th Cir.1969) (airplane is not "motor vehicle" under Kentucky motor vehicle statute authorizing substituted service of process on nonresidents); *In re Hayden's Estate,* 174 Kan. 140, 254 P.2d 813, 817 (1953) (airplane is not "motor vehicle" as term is used in guest statute limiting liability of operator).

We also decline Jennifer's invitation to invalidate the spousal exclusion because airplane accidents are "closer" to the types of "accidents contemplated under the motor vehicle cases than the types of cases that are brought under homeowners policies," where family exclusions appear to be routinely upheld. *See, e.g., Clendening, supra,* 197 Cal. Rptr. at 379; *Ryan, supra,* 330 N.W.2d at 115–116; *Foley, supra; Neil, supra,* 549 A.2d at 1306. Jennifer misinterprets these cases. The validity of the exclusion depends not upon a comparison of the types of accidents likely to fall within the coverage of a particular insurance policy, but on the absence of a legislative declaration requiring coverage.

California cases are persuasive on this point because in *Hughes, supra,* 236 N.W.2d at 881, we relied on the California Supreme Court's decision in *Wildman v. Government Employees' Insurance Co.,* 48 Cal.2d 31, 307 P.2d 359 (1957), in invalidating the family exclusion clause because it violated our motor vehicle financial responsibility laws. When later dealing with aviation insurance policies, California courts have distinguished the *Wildman* rationale.

In *Grubb v. Ranger Ins. Co.*, 77 Cal.App.3d 526, 143 Cal.Rptr. 558 (1978), the plaintiff relied on *Wildman* and argued public policy invalidated a provision in an aviation liability policy excluding coverage for passengers. In rejecting this argument, the court reasoned:

> "In contrast to the statutory scheme considered by the Supreme Court in *Wildman,* there was no statutory expression of a public policy mandating insurance coverage for aircraft passengers at the time of the airplane crash. . . .
>
> "Under these circumstances, it is apparent that there has never been legislative or other policy requiring that insurance be furnished to cover the aircraft owner's or operator's liability for damages for injury or death suffered by a passenger riding in the aircraft. It is therefore not appropriate to rewrite the policy here in issue to create such a liability."

*Grubb, supra,* 143 Cal.Rptr. at 561.

The California Supreme Court also rejected a similar public policy argument in *National Insurance Underwriters v. Carter,* 17 Cal.3d 380, 131 Cal.Rptr. 42, 551 P.2d 362 (1976). The aviation insurance policy in *Carter* excluded coverage for accidents occurring while the aircraft was piloted by an unqualified pilot, as defined by the policy. The defendants contended the public policy expressed in the financial responsibility provisions of the Vehicle Code should be incorporated into the Uniform Aircraft Financial Responsibility Act, which had been adopted in California. The California Supreme Court disagreed, stating:

> "*Wildman* and the cases following it speak in the context of a statutory scheme which *expressly* requires certain coverage to be included in every *automobile* insurance policy. In contrast, in the absence of any general declaration of public policy mandating coverage of 'permissive users' for aircraft, we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute."

*Carter, supra,* 131 Cal.Rptr. at 47, 551 P.2d at 367 [emphasis in original].

Jennifer has not cited, nor have we found, any state statute that expressly requires coverage for persons injured in an aviation accident. Indeed, N.D.C.C. § 26.1–25–02 expressly exempts from insurance rate regulation "[i]nsurance against loss or damage to aircraft or against liability . . . arising out of ownership, maintenance, or use of aircraft." We will not "proceed to act on a supposed public policy not announced by the Legislature, nor self obviously compelling." *Hahn, supra,* 547 N.E.2d at 1146.

We conclude that the public policy expressed in *Hughes* and in our motor vehicle financial responsibility laws is inapplicable here, and does not invalidate the spousal exclusion.

### III

■ During oral argument, Jennifer also asserted that the spousal exclusion contravenes public policy because it violates N.D.C.C. § 14–02.4–01, which prohibits discrimination on the basis of "status with regard to marriage. . . ." Jennifer did not cite the statute or argue its possible application to this case in her appellate brief and RLI was, understandably, unprepared to respond to the contention at oral argument. Oral argument is too late to assert this contention for the first time. *See, e.g., McNamara v. N.D. Dept. of Transp.,* 500 N.W.2d 585, 591 (N.D.1993) (appellant could not raise possible violation of statute for first time at oral argument). Accordingly, we decline to address the question.

### IV

■ Jennifer asserts that the spousal exclusion is invalid because it would frustrate the reasonable expectations of the purchaser of the policy. The doctrine of reasonable expectations, however, is an interpretive tool in the construction of contracts. *See Walle Mut. Ins. Co. v. Sweeney,* 419 N.W.2d 176, 181 n. 4 (N.D.1988) [doctrine provides that "an ambiguous contract must be interpreted to mean what the weaker contracting party reasonably expects the contract to mean"]; *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 671 (N.D.1977) [doctrine is "an interpretive tool to aid courts in discerning the intention of the parties bound by adhe-

sion contracts"]. *See also* Comment, 62 N.D.L.Rev. 423, 424 (1986); Young, Lewis & Lee, *Insurance Contract Interpretation: Issues and Trends,* 625 Ins.L.J. 71, 78 (1975); Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv.L.Rev. 961, 967 (1970). The doctrine of reasonable expectations has yet to be accepted by a majority of this court, *see Sweeney, supra; Mills, supra,* but even if it were, it would not apply here because the federal court has made no determination of ambiguity and has not certified that question to us. We therefore decline to address this question. *See Target Stores v. Automated Maintenance,* 492 N.W.2d 899, 904 n. 1 (N.D.1992).

Based on the arguments properly raised, we conclude that the RLI spousal exclusion is valid and enforceable.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.