958 P.2d 552

**Indalescia T. SALVIEJO, Armando M. Salviejo, and Felipe B. Salviejo, Plaintiffs–Appellants,**

v.

**STATE FARM FIRE AND CASUALTY CO., an Illinois corporation, Defendant–Appellee,**

and

**CKI, Inc., a Hawai'i corporation, dba Mc-Donald's Waipahu; Bounce–A–Bout, Inc., an Iowa corporation; Wapello Fabrications Company, an Iowa corporation; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Non–Profit" Corporations 1–10; and Roe Governmental Entities 1–10, Defendants.**

No. 20811.

Intermediate Court of Appeals of Hawai'i.

June 17, 1998.

Roy K.S. Chang and Henry N. Kitamura (Shim Tam & Chang), and Kenneth T. Okamoto and Susan C. Yi (Price Okamoto Himeno & Lum), on the briefs, Honolulu, for plaintiffs-appellants.

Randall Y. Yamamoto and John S.Sasaki (Watanabe, Ing & Kawashima), on the brief, Honolulu, for defendant-appellee.

Before WATANABE and ACOBA, JJ., and Circuit Judge LIM in place of KIRIMITSU, J., recused.

ACOBA, Judge.

We uphold the validity of a homeowner's insurance policy provision that excludes personal liability coverage for bodily injury sustained by a named insured or a resident of the named insured's household, if the resident is a relative or "any other person under the age of 21 who is in care of" either a named insured or a relative. Although similar exclusions in automobile insurance policies have been invalidated, the cases which so hold have relied upon public policies expressed in statutes regulating automobile insurance. In this case, we have not been referred to any similar public policy basis for invalidating this type of exclusion in a homeowner's policy. Thus, we are constrained to hold that this exclusion does not violate public policy and is therefore valid and enforceable.

Accordingly, we affirm the December 5, 1996 order granting summary judgment to Defendant–Appellee State Farm Fire and Casualty Company (State Farm) and the June 5, 1997 final judgment entered in favor of State Farm and against Plaintiffs–Appellants Indalescia T. Salviejo (Indalescia), Armando M. Salviejo (Armando), and Felipe B. Salviejo (Felipe) (collectively referred to herein as Plaintiffs).

## I.

### A.

Plaintiffs have alleged that on or about February 10, 1994, Felipe took his granddaughter, Angeline Salviejo (Angeline), to the McDonald's restaurant in Waipahu, Hawai'i, where Angeline purportedly injured her right hand in an "unguarded air compressor" while she was playing in McDonald's "Play Place." At the time of Angeline's accident, Plaintiffs were covered by a homeowner's insurance policy (the policy) issued by State Farm. In Section II, the policy provided coverage for "personal liability" and for "medical payments to others":

**COVERAGE L—PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.   pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.   provide a defense at our expense by counsel of our choice....

### COVERAGE M—MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**....

(Boldfaced emphases in original.)

Section II contained several exclusions, including the following "household exclusion," which is the only exclusion at issue on this appeal:

1.   Coverage L and Coverage M do not apply to:

   ....

   h.   **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

   This exclusion also applies to any claim made or suit brought against any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury**[.]

(Boldfaced emphases in original.)   The definition of "insured" referred to in the household exclusion is as follows:

4.   **"insured"** means you and, if residents of your household,

   a.   your relatives; and

   b.   any other person under the age of 21 who is in care of a person described above.

(Boldfaced emphasis in original.)   The definition section also stated that the references to "you" and "your" in the policy were to the "named insured" as shown on the Declarations page of the policy.   The named insureds were Felipe, his wife Susana, Indalescia, and Armando; all of the named insureds were listed as residing at the same street address in Waipahu, Hawai'i.

**B.**

On December 6, 1994, Angeline's parents, Indalescia and Armando (collectively the Salviejos), filed a tort action (the underlying action) against Defendant CKI, Inc., dba McDonald's Waipahu, (CKI) and Defendants John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Roe "Non–Profit" Corporations 1–10, and Roe Governmental Entities 1–10 (collectively referred to herein as the Doe defendants).   Indalescia, as guardian prochein ami for Angeline, sued for general damages suffered by Angeline, and the Salviejos, as individuals, sued for, *inter alia*, general damages for their emotional distress.

On May 17, 1995, CKI filed a third-party complaint against Defendant Bounce–A–Bout, Inc. (BAB), Defendant Wapello Fabrications Company (WFC), and Felipe, alleging that they were negligent and seeking indemnification and/or contribution from them.   By a letter dated May 22, 1995, Plaintiffs' counsel requested that State Farm provide a defense to Felipe against CKI's complaint, pursuant to the policy.   Felipe was a named insured.

By a June 27, 1995 letter, State Farm denied the request to defend Felipe against CKI's complaint.   Citing the household exclusion, State Farm noted that Angeline is Felipe's granddaughter and thus would fall in the policy's definition of "insured."   State Farm later "admit[ted] that it denied a defense and coverage for [Felipe] because he was sued by a third-party who in turn had been sued by a member of [Felipe's] own household," but asserted that it "also relied upon other provisions in the policy as well" as the household exclusion to deny Felipe a defense.[1]

On May 31, 1995, BAB and WFC filed a cross-claim against Felipe, alleging that he was negligent and seeking indemnification and/or contribution from him.   Plaintiffs have represented that Felipe also tendered the defense of this cross-claim to State Farm, but again State Farm "refused to so defend

---

1.   Defendant–Appellee State Farm Fire and Casualty Company (State Farm) did not elaborate as to what other provisions upon which it relied.

In any event, no other policy provisions are at issue on this appeal.

or extend coverage." In its answer to Plaintiffs' subsequent declaratory judgment complaint, discussed *infra*, State Farm neither admitted nor denied this allegation. There are no letters in the record indicating that Plaintiffs tendered a defense of the cross-claim to State Farm, or that State Farm refused to defend against the cross-claim.[2]

On July 11, 1995, CKI filed a counterclaim against Indalescia, individually, and Armando, again alleging negligence and seeking indemnification and/or contribution. By a July 21, 1995 letter, the Salviejos tendered the defense of the counterclaim to State Farm. State Farm rejected this tender of defense for the same reason that it denied Felipe a defense against CKI's complaint.

### C.

On August 31, 1995, Plaintiffs filed a declaratory judgment action against State Farm, CKI, BAB, WFC, and the Doe defendants. Plaintiffs requested the court to order that (1) State Farm had a "duty to defend and/or indemnify Plaintiffs against the claims made against them by other defendants in [the underlying action], and to provide [Plaintiffs] liability coverage up to the limits of their insurance policy"; and that

(2) the household exclusion was "null and void as against public policy."[3]

On October 16, 1996, State Farm filed its motion for summary judgment.[4] In its supporting memorandum, State Farm asserted that there were no factual disputes regarding "the substance of the various claims that have been asserted against Plaintiffs[,]" the policy's provisions and terms, or the relationships between Plaintiffs and Angeline. State Farm argued that it was entitled to judgment as a matter of law because an insurer's duty to defend is triggered only when the claims alleged against its insured raise a possibility of coverage; since the household exclusion "preclude[d] coverage for any claims against an insured because of 'bodily injury' to Angeline[,]" State Farm reasoned, there was no possibility of coverage for these claims and, hence, State Farm had no duty to defend against them. State Farm further contended that the household exclusion did not violate any public policy.[5]

On November 6, 1996, the Salviejos filed their opposition memorandum, to State Farm's motion. Their sole argument was that the household exclusion violated public policy and was therefore void and unenforceable.[6] Felipe filed his opposition memoran-

2. In its summary judgment memorandum and on appeal, State Farm has referred only to the third-party complaint and the counterclaim, discussed above *infra*, but not the cross-claim, regarding what State Farm was requested to and refused to defend.

3. Plaintiffs–Appellants Indalescia T. Salviejo (Indalescia), Armando M. Salviejo (Armando), and Felipe B. Salviejo (Felipe) (collectively referred to herein as Plaintiffs) also requested the following relief: (1) a determination by the court that State Farm was "negligent, ... acted in bad faith, breached its contract with [P]laintiffs, and ... engaged in fraud and deception"; (2) an award of general, special, economic, non-economic, treble, and punitive damages; and (3) an award of "any costs, expenses and/or fees" incurred by Plaintiffs "in defending and/or indemnifying themselves against the claims made against them by other defendants" in the action (the underlying action) brought by Indalescia and Armando (the Salviejos).

4. State Farm supported its motion with the following exhibits: the complaint filed in the underlying action; the third-party complaint filed by Defendant CKI, Inc., dba McDonald's Waipahu, (CKI) against Defendant Bounce–A–Bout, Inc., Defendant Wapello Fabrications Company, and

Felipe; CKI's counterclaim against the Salviejos; the letters from Plaintiffs' counsel to State Farm requesting a defense against the third-party complaint and the counterclaim; the letters from State Farm denying Plaintiffs a defense against the third-party complaint and the counterclaim; the policy; and Indalescia's responses to State Farm's first requests for admissions and for answers to interrogatories. Plaintiffs had previously submitted, as attachments to their declaratory judgment complaint, all of the exhibits relied upon by State Farm except CKI's counterclaim and the responses to State Farm's admissions and interrogatories requests.

5. With respect to Plaintiffs' other claims in the declaratory judgment action, State Farm argued that there was no evidence that it acted negligently or in bad faith, or that it breached its contract with Plaintiffs in relying on the household exclusion to deny Plaintiffs a defense. Regarding the fraud claim, State Farm asserted that it was not pled with sufficient particularity and was without evidentiary support.

6. The only exhibits attached to the Salviejos' opposition memorandum were photocopies of two cases, *State Farm Mut. Auto. Ins. Co. v.*

dum the same day, and also maintained that the household exclusion contravened public policy.

At the November 8, 1996 hearing on the motion, Plaintiffs' counsel admitted that the household exclusion applied to the facts of the case, and that Plaintiffs could not cite to legal authority from any jurisdiction invalidating a household exclusion provision in a homeowner's insurance policy.

### D. .

On December 5, 1996, the court entered a written order granting State Farm's motion. The court explained its reasoning as follows:

> [Plaintiffs] acknowledge and concede that the facts of this case fall squarely within [the household exclusion]; however, Plaintiffs argue that this clause is void against public policy;
>
> Plaintiffs acknowledge that they know of no case which has invalidated a similar clause in a homeowner's insurance policy;
>
> There being no genuine issues of material facts and based on the foregoing;
>
> **IT IS HEREBY ORDERED** that [State Farm's] Motion for Summary Judgment is hereby granted in favor of [State Farm] and against [Plaintiffs] as to any and all claims in this action;
>
> Judgement is hereby entered in favor of [State Farm] and against [Plaintiffs] on the Complaint for Declaratory Judgment filed herein.

(Boldfaced emphasis in original.) The court recognized that Plaintiffs' claims against CKI, BAB, and WFC still remained.

On January 27, 1997, Plaintiffs, State Farm, CKI, BAB, and WFC entered into a written stipulation dismissing without prejudice the claims in Plaintiffs' declaratory judgment action against CKI, BAB, and WFC. The stipulation also noted that no Doe defendants had appeared.

On February 10, 1997, Plaintiffs appealed from the court's December 5, 1996 order,

*Wolfe,* 638 F.Supp. 1247 (D.Hawai'i 1986) and *Tamashiro v. De Gama,* 51 Haw. 74, 450 P.2d

noting that a stipulation dismissing CKI, BAB, and WFC had been filed.

By an April 14, 1997 order, the Hawai'i Supreme Court dismissed Plaintiffs' appeal on the ground that a judgment resolving all claims against all parties had not been entered as required by Hawai'i Rules of Civil Procedure Rule 58.

Thereafter, on June 5, 1997, the court entered a final judgment. This judgment was entered in favor of State Farm and against Plaintiffs, and noted that Plaintiffs' declaratory judgment claims against CKI, BAB, and WFC were dismissed. On July 3, 1997, Plaintiffs appealed the June 5, 1997 judgment.

### II.

■ We review an order granting summary judgment under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting,* 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Hence, we must determine whether, viewing all the evidence in a light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and the moving party [has] clearly demonstrate[d] that it is entitled to judgment as a matter of law." *Id.*

■ The parties do not dispute any of the material facts with respect to State Farm's duty to defend and/or indemnify Plaintiffs. The sole issue on appeal, therefore, is whether the court was correct in concluding that the household exclusion in the policy is not void as against public policy and thus enforceable. We review conclusions of law under the right/wrong standard. *Wharton v. Hawaiian Elec. Co.,* 80 Hawai'i 120, 122, 906 P.2d 127, 129 (1995).

### III.

■ Our jurisdiction follows the principle that "[l]iability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are

998 (1969).

not in contravention of statutory inhibitions or public policy." *Dawes v. First Ins. Co. of Hawaii*, 77 Hawai'i 117, 121, 883 P.2d 38, 42 (internal quotation marks and citations omitted), *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). The parties do not point to any statutory provision which would prohibit the household exclusion clause in a homeowner's insurance policy.[7] Instead, Plaintiffs argue that the household exclusion should be invalidated on the ground that it violates public policy. The term "public policy" "ordinarily includes the notion of the general 'public good,' as well as the policies enunciated by the jurisdiction's constitution, common or statutory laws, and judicial decisions[.]" 7 L. Russ & T. Segalla, *Couch on Insurance 3d* § 101:15, at 101–51 to 101–52 (1997) [hereinafter *Couch on Insurance 3d*] (footnotes omitted).[8]

Plaintiffs essentially make three arguments to support their contention that the household exclusion is void as against public policy: (1) the household exclusion violates the public policy expressed in Hawai'i case law rejecting the doctrines of parent-child and interspousal immunity; (2) the Hawai'i Supreme Court has found a household exclusion in an automobile insurance policy to be void as against public policy; and (3) the household exclusion "would deprive [Plaintiffs] the defense which they could not afford to pay on their own and which they thought they had provided for when they bought their policy of insurance from State Farm." Plaintiffs also argue, as a related point, that the household exclusion "is overly broad to exclude not only suits between family members but also suits between third[-]party defendants and family members."

**IV.**

**A.**

We first examine the public policy abrogating parent-child immunity and interspousal immunity.

In *Tamashiro v. De Gama*, 51 Haw. 74, 450 P.2d 998 (1969), the Hawai'i Supreme Court rejected the doctrine of parent-child immunity insofar as it "prohibit[ed] suits by parents against their children[,]" reasoning that "the injustice of denying recovery purely on the basis of family relationship outweighs the danger of fraud" and collusion potentially present in such suits. *Id.* at 78–79, 450 P.2d at 1002. This statement was made in the context of a third-party complaint against plaintiffs' son, seeking contribution from the son for injuries suffered by the plaintiffs in an automobile accident between vehicles driven by the son and the defendant. *Id.* at 74, 450 P.2d at 999–1000. The supreme court held that "[s]ince the minor child herein is liable in tort to his parent, he is subject to contribution to his joint tortfeasor under the Uniform Contribution Among Tortfeasors Act." *Id.* at 79, 450 P.2d at 1002. The supreme court later extended the reasoning of *Tamashiro* to hold that children may sue their parents as well. *Petersen v. City & County of Honolulu*, 51 Haw. 484, 486, 462 P.2d 1007, 1008 (1969).

The Hawai'i Supreme Court faced the question of the interaction between interspousal immunity and the Uniform Contribution Among Tortfeasors Act in *Campo v. Taboada*, 68 Haw. 505, 720 P.2d 181 (1986). In *Campo*, the husband, a passenger in the

---

**7.** The only statutory regulation in Hawai'i of homeowner's insurance policies appears to be in Hawai'i Revised Statutes (HRS) chapter 431:10 (1993). This chapter contains general provisions regulating insurance contracts, including homeowner's insurance policies. HRS § 431:10–102(a).

**8.** The term "public policy" has also been defined as "that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Smith v. Chaney Brooks Realty*, 10 Haw. App. 250, 257, 865 P.2d 170, 173 (1994) (internal quotation marks, citations, and emphasis omit-

ted); *see also Parnar v. Americana Hotels*, 65 Haw. 370, 379 n. 13, 652 P.2d 625, 630 n. 13 (1982). Although this definition was put forth in the context of wrongful termination cases, it is also appears to be applicable to cases considering the validity of insurance policy provisions. *See, e.g., Rich v. Allstate Ins. Co.*, 191 W.Va. 308, 445 S.E.2d 249, 252 (1994) (holding that the "appellant has failed to establish that the exclusionary language within the homeowner's insurance policy tended to be injurious to the public or against [the] public good" and thus the exclusion at issue was not contrary to public policy) (internal quotation marks omitted).

vehicle driven by his wife at the time of an automobile accident between his wife and another motorist, sued the other motorist for injuries he sustained in the accident. *Id.* at 506, 720 P.2d at 182. The other motorist then filed a third-party complaint against the wife for contribution, and the wife argued that this complaint was barred by Hawai'i Revised Statutes (HRS) § 573–5 (1976), which provided that "[a] married woman may sue and be sued in the same manner as if she were sole; but this section shall not be construed to authorize suits between husband and wife." [9] *Id.* at 506 & 506 n. 1, 720 P.2d at 182 & 182 n. 1. HRS § 573–5 had been construed in *Peters v. Peters*, 63 Haw. 653, 634 P.2d 586 (1981), to bar direct suits between spouses. *Campo*, 68 Haw. at 506, 720 P.2d at 181. Reasoning that the danger of collusion should not be used to bar the third-party complaint, the supreme court in *Campo* permitted the other motorist to file the claim for contribution from the wife for her husband's injuries. *Id.* at 508, 720 P.2d at 183.

We observe that neither *Tamashiro* nor *Campo* expressly involved the question of the availability of insurance coverage in lawsuits between family members or in suits where a third-party claim is made against a family member. The supreme court did reason in *Tamashiro* that "[w]here there is insurance coverage, intrafamily discord will be reduced because the injured party will be compensated for his [or her] losses" and accordingly rejected the notion that permitting parent-child actions would "interfere with parental discipline and disturb domestic harmony." *Tamashiro*, 51 Haw. at 77–78, 450 P.2d at 1001. It was later clarified, however, that

the supreme court "did not expressly base [its] holding in *Tamashiro* upon the existence of insurance"; furthermore, the supreme court held that "parent-child negligence suits [are] allowed in [Hawai'i] *regardless of the presence or absence of insurance coverage.*" *Petersen*, 51 Haw. at 486, 462 P.2d at 1008 (emphasis added).

### B.

Plaintiffs urge us to follow the rationale expressed in *State Farm Mut. Auto. Ins. Co. v. Wolfe*, 638 F.Supp. 1247 (D.Hawai'i 1986), where the district court invalidated a household exclusion in an automobile insurance policy, in part because the exclusion was found to contravene a public policy allegedly expressed in *Tamashiro*. In *Wolfe*, after a child was killed in an automobile accident, the administrator of the child's estate sued the parents for negligent supervision. *Id.* at 1248. Claiming that the parents' automobile insurance policy excluded coverage for bodily injury to the child, the insurer filed a declaratory judgment action. *Id.* The exclusion relied upon by the insurer "purport[ed] to exclude all liability coverage for 'bodily injury to any member of the family of an insured residing in the same household as the insured.'" *Id.*

The insurer asserted that this exclusion was necessary to avoid collusive lawsuits. *Id.* The district court disagreed, basing its decision to invalidate the exclusion on public policy grounds on *Tamashiro* and *Petersen*:

[T]he [Hawai'i] Supreme Court has specifically addressed this issue, noting that, "although collusion is a possible consequence of allowance of suits between par-

---

9. HRS § 573–5 (1976) was renumbered as HRS § 572–28 (Supp.1987) and amended to provide that "[t]his section shall not be construed to authorize tort suits between spouses." *See* 1987 Haw. Sess. L. Act 46, §§ 2 and 4, at 102–03; 1993 Haw. Sess. L. Act 70, § 2, at 87. The legislative history demonstrates that the amendment was intended "to more fairly and equitably protect married persons[,]" in part by removing the interspousal immunity prohibition against suits between spouses "even when such a suit is desired by both spouses":

An accident victim may sue to receive compensation for medical, psychological, and other expenses from the insurance company of the person at fault. If, however, the victim is the

spouse of the person who caused the accident, the interspousal tort immunity rule prohibits the injured spouse from suing for compensation, although any other injured party possesses the right to bring suit.

1993 Haw. Sess. L. Act 70, § 1, at 87. We do not construe this passage as evidencing an intent to *require* insurance coverage for interspousal suits; rather, the statutory amendment appears to permit an injured spouse to sue his or her spouse for compensation. While the compensation may have been contemplated as being furnished by an insurer, this was not required under the amendment to the statute. *See* discussion *infra* part V.

ent and child, we think that our judicial system is adequate to discover them [sic] when they [sic] occur." [*Tamashiro*, 51 Haw. at 78–79, 450 P.2d at 1001–02.] As a result, "parent-child negligence suits will be allowed in [Hawai'i] regardless of the presence or absence of insurance coverage." [*Petersen*, 51 Haw. at 486, 462 P.2d at 1008.]

*Wolfe*, 638 F.Supp. at 1248. It was concluded that the exclusion violated public policy because "[a]ny danger of collusive lawsuits is outweighed by the injustice of rendering negligent drivers effectively judgement-proof as to members of their family, by depriving them of insurance coverage which extends to all non-family members for the same negligent action." *Id.*

However, the exclusion was also invalidated on the ground that it violated HRS § 294–10(a)(1) (1976 and Supp.1984), which mandated liability coverage " 'sustained by *any* one person as a result of any one [automobile] accident[.]' " *Id.* at 1248–50 & 1248 n. 1 (quoting HRS § 294–10(a)(1) (emphasis added)). The district court did not indicate whether it gave one ground greater weight than the other in invalidating the exclusion.[10]

## V.

It has been observed that "[p]rovisions excluding injuries to relatives or other household members from liability coverage [in homeowner's insurance policies] are generally valid" and have as their purpose the "prevent[ion of] collusion in the filing of insurance claims." 9 *Couch on Insurance 3d* § 128:3, at 128–8 to 128–9 (footnotes omitted). De-

spite Plaintiffs' contention, it is said that "[s]uch exclusions neither counter the state's interest in protecting and preventing injuries to its children, *nor frustrate the public policy against immunity from interspousal or intrafamily torts.*" *Id.* at 128–9 (footnotes omitted) (emphasis added). We, too, must agree with this proposition, after reviewing other states' treatments of the argument that household exclusions in insurance policies violate some public policy emanating from the abrogation of intrafamily tort immunity.

### A.

We find that other jurisdictions have held that the abrogation of intrafamily tort immunity cannot be used to invalidate, on public policy grounds, exclusions in homeowner's insurance policies similar to the household exclusion at issue here.

The Washington Supreme Court has concluded that case law abrogating intrafamily tort immunity does not establish a "separate public policy sufficient to override" a household exclusion in a homeowner's insurance policy. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 687 P.2d 1139, 1143 (1984). In *Emerson*, the insureds asserted that the Washington Supreme Court had previously relied on cases abolishing intrafamily tort immunity to invalidate a household exclusion clause in an automobile insurance policy. *Id.* The *Emerson* court recognized that, in *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441 (1982), it "rejected the insurers' justification of fraud and collusion necessi-

---

**10.** In *AIG Hawaii Ins. Co. v. Smith*, 78 Hawai'i 174, 891 P.2d 261, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995), the Hawai'i Supreme Court was urged to follow the holding of *Wolfe*. *Smith*, 78 Hawai'i at 180, 891 P.2d at 267. In that case, the insured cited *Wolfe* in support of its argument to invalidate a clause in an automobile insurance policy which "precluded liability coverage on any vehicle, 'other than [the] covered auto,' which was 'owned by or furnished or available for the regular use of any family member.' " *Id.* at 177, 891 P.2d at 264. Rejecting the insured's reliance on *Wolfe* and apparently holding that this "resident relative" clause was not void as against public policy, the supreme court stated that *Wolfe* was "decided without the benefit of [the] decision in *Kang v.*

*State Farm Mut[.] Auto[.] Ins[.] Co.*, 72 Haw. 251, 815 P.2d 1020 (1991), wherein [the supreme court] held that the 'resident relative' exclusion was consistent with the public policy of providing insurance at the least possible cost." *Smith*, 78 Hawai'i at 181, 891 P.2d at 268.

We cannot ascertain whether this was a rejection of *Wolfe*, however, because *Kang* did not appear to consider the validity of a resident relative exclusion. *See Kang*, 72 Haw. at 259, 815 P.2d at 1024. The issue in *Kang* was the validity of a policy provision excluding the insured vehicle from the policy's definition of an underinsured vehicle for purposes of underinsured motorist benefits. *Id.* at 252–53, 815 P.2d at 1020–21. The supreme court upheld the validity of that provision. *Id.* at 261, 815 P.2d at 1025.

tating such clauses by pointing out that the court had dismissed similar arguments in removing the common law bar to intrafamily tort immunity." *Emerson,* 687 P.2d at 1143. The *Emerson* court explained, however, that *"Wiscomb's* discussion of intra[ ]family tort immunity was limited to refuting the insurer's justification *rather than a recognition of a separate public policy sufficient to override private contracts." Id.* (emphasis added). Furthermore, "contrary to [the insureds'] arguments, the [household] exclusion does not reinstate the common law immunity, but rather excludes insurance proceeds as a source of recovery when the insured has purchased a policy with such an exclusion." *Id.; accord State Farm Fire & Cas. Co. v. Clendening,* 150 Cal.App.3d 40, 43, 197 Cal.Rptr. 377 (1983) ("[T]he implementation of the [household] exclusionary clause does not deprive [the wife] of her lawsuit since she may still sue her husband and recover from available assets. The insurance carrier need not insure risks arising from intrafamily torts unless it chooses to do so."); *Neil v. Allstate Ins. Co.,* 379 Pa.Super. 299, 549 A.2d 1304, 1310–11 (1988) (citing *Emerson,* 687 P.2d at 1143).

In *Foley v. Foley,* 173 N.J.Super. 256, 414 A.2d 34 (1980), it was similarly argued that if the household exclusion were upheld, then the insurer would have "effectively destroyed the rationale involved in all immunity cases that there would be no disruption of the family unit or family harmony because the ultimate responsible party is the insurance carrier." *Id.* at 35. The New Jersey Superior Court disagreed, holding that "[a] decision by a court that there can be liability for a tort action cannot be construed as a holding that public policy requires the responsible party to be covered by insurance or that an insurance company cannot exclude liability for that particular action." *Id.*

A New York appellate court found the rationale of *Emerson* and *Foley* compelling in *Suba v. State Farm Fire and Cas. Co.,* 114 A.D.2d 280, 498 N.Y.S.2d 656 (1986), where an insured claimed that the household exclusion in a homeowner's policy violated public policy because the New York Supreme Court

had "removed the court-imposed rule of parental tort immunity largely because of the presence of insurance[.]" *Id.* at 658. Citing *Emerson* and *Foley,* the New York court held that the household exclusion did not violate public policy. *Id.* at 657–58; *accord Hahn v. Berkshire Mut. Ins. Co.,* 28 Mass. App.Ct. 181, 547 N.E.2d 1144, 1145 (1989) (citing *Suba* and rejecting the insured's "broad and quite illogical conclusion that insurers must provide protection, so that there may actually be a source of funds to respond to the tort claims unshielded by immunity").

### B.

Insureds under other types of insurance policies have also unsuccessfully advanced the argument that similar household exclusion clauses in their policies violated the public policy behind abolishing intrafamily tort immunity.

In *RLI Ins. Co. v. Heling,* 520 N.W.2d 849 (N.D.1994), the North Dakota Supreme Court considered and rejected a public policy argument concerning a "spousal exclusion" clause in an aircraft liability insurance policy. The aircraft policy excluded liability coverage for bodily injury to "you" and defined the term "you" as the named insured and his or her spouse, if the spouse resided in the same household as the named insured. *Id.* at 850. The named insured was a man, who, while piloting his aircraft, was killed in an accident that also injured his wife. *Id.* After the wife sued her husband's estate, the aircraft insurer brought a declaratory judgment action contending that the spousal exclusion barred coverage for bodily injury to the wife; in response, the wife argued that "the spousal exclusion undercuts the public policy underlying the abrogation of interspousal immunity." *Id.* at 850–51. Rejecting this contention, the North Dakota court observed that "neither this court's decision [nor the statute abrogating interspousal immunity] purports to determine the scope of a contract between an insured and an insurer; rather, they authorize a spouse to sue the other spouse in tort." *Id.* at 851. It then concluded that "[t]he right of one spouse to sue the other does not require insurers to provide protection so that there may actually

be a source of funds to respond to tort claims no longer shielded by immunity." *Id.* at 851–52. The *Heling* court held that "the exclusion of a spouse or other family member from insurance coverage does not frustrate the public policy against immunity for inter[ ]spousal or intrafamily torts." *Id.* at 852.

This conclusion has been reached by other courts that have upheld household exclusion clauses in automobile insurance policies. *See, e.g., Auto Owners Ins. Co. v. Van Gessel,* 665 So.2d 263, 267–68 (Fla.Dist.Ct.App. 1995) ("declin[ing] to equate the broader empowerment given family members to bring a cause of action against another family member with any availability of [automobile] insurance coverage"); *Allstate Ins. Co. v. Elwell,* 513 A.2d 269, 273 (Me. 1986) ("[T]he abolition of intra[ ]family tort immunities has no effect on the validity of the [household] exclusion [in an automobile insurance policy]."); *Faraj v. Allstate Ins. Co.,* 486 A.2d 582, 585 (R.I. 1984) (concluding that cases abrogating doctrines of interspousal and parent-child immunity "did not purport to determine the scope of contract between an insurer and an insured"). While we recognize that the Hawaiʻi Supreme Court has invalidated household exclusion clauses regarding underinsured motorist (UIM) benefits in automobile insurance policies on the ground that they violated the public policy of providing adequate compensation to victims of negligent drivers, *see Kaiama v. AIG Hawaii Ins. Co.,* 84 Hawaiʻi 133, 930 P.2d 1352 (1997), discussed *infra* part VI, the public policy behind the abrogation of intrafamily tort immunity was not cited as a reason to invalidate these clauses in automobile insurance policies.

## C.

It has been stated that "some courts find[ ] [a jurisdiction's intrafamily] immunity rules to indicate a public policy" which "affect[s] the validity of family and household exclusions in liability insurance policies[.]" 7 *Couch on Insurance 3d* § 101:15, at 101–51 (footnotes omitted). The only cases cited for this proposition are *Southeastern Fidelity Ins. Co. v. Chaney,* 189 Ga.App. 625, 376 S.E.2d 710 (1988), *aff'd,* 259 Ga. 474, 381 S.E.2d 747 (1989) and *Stepho v. Allstate Ins. Co.,* 259 Ga. 475, 383 S.E.2d 887 (1989).

In *Chaney,* 376 S.E.2d at 710–11, the Georgia Court of Appeals invalidated an automobile insurance policy clause which provided, in pertinent part, that "[t]his policy does not apply under the Bodily Injury and Property Damage Liability Coverages to (1) the named insured, or (2) any person who is related by blood, marriage or adoption to and is a resident of the same household as ... the insured[.]" Affirming, the Georgia Supreme Court reiterated that " *'[i]n view of our overriding policy of complete liability coverage for the protection of the public and the insured,* if the exclusion were broader than the tort immunity of this state, the exclusion would be against public policy.' " *Chaney,* 381 S.E.2d at 748 (quoting *GEICO v. Dickey,* 255 Ga. 661, 340 S.E.2d 595, 596–97 (1986)) (emphasis added). However, examination of *Dickey* indicates that the exclusion was invalidated because of Georgia's mandatory automobile insurance statute, not simply because an insured could be subject to suit brought by a family member.

The trial court in *Dickey* had concluded that "under Georgia law, a family immunity exclusion [in an automobile insurance policy] would be valid only in cases where intrafamily immunity would be imposed." *Dickey,* 340 S.E.2d at 596. The Georgia Supreme Court criticized the rationale, but ultimately upheld the conclusion because of the policy reflected by the state's compulsory automobile insurance law:

> The difficulty with the conclusion of the [trial] court is that the court leaps from the finding that intrafamily tort immunity is no longer an ironclad doctrine in Georgia to the conclusion that a [household] exclusion clause is against public policy. *We do not agree that modification of intra[ ]family tort immunity in Georgia mandates this result.* We find, however, that to allow the exclusion under the facts of this case would be against the public policy of this state *because of the resulting conflict with the policy underlying our compulsory [automobile] insurance law.* As we have clearly stated, compulsory liability insurance is

required not only for the benefit of the insured but *to ensure compensation for innocent victims of negligent motorists.*

... *In view of our overriding policy of complete liability coverage for the protection of the public and the insured,* if the exclusion were broader than the tort immunity of this state, the exclusion would be against public policy.

*Id.* (internal quotation marks and citations omitted) (emphases added). As this passage reveals, the household exclusion was found to violate public policy due to the state's compulsory *automobile* insurance liability law; given that this law evidenced a policy of "complete liability coverage," the Georgia Supreme Court reasoned that it would be against public policy to permit a tort suit among family members but then deny liability coverage to the responsible family member. It is clear that the Georgia Supreme Court did *not* hold that the modification of intrafamily immunity, on its own, rendered the household exclusion void as against public policy.

This interpretation is further supported by *Stepho,* where the Georgia Supreme Court stated that "[t]he public policy considerations relating to [household] exclusion provisions in automobile liability insurance policies *stem from the legislature's enactment of the mandatory [automobile] insurance statute."* *Stepho,* 383 S.E.2d at 888 (emphasis added). The "dual policies" of the statute were considered to be "protection for innocent victims of negligent members of the motoring public" and the "protection of the insured against unfair exposure to unanticipated liability." *Id.* If the household exclusion were valid, the injured family member "would be left unprotected" and, additionally, if there were no intrafamily tort immunity, then the insured family member would have "unfair exposure to unanticipated liability." *Id.* at 888–89. The household exclusion in an automobile insurance policy was thus declared invalid. *Id.* at 889.

It is noteworthy that the Georgia Court of Appeals has upheld and enforced a similar household exclusion clause in a *homeowner's* insurance policy. *See Southern Fire & Cas. Co. v. Jamerson,* 223 Ga.App. 582, 479 S.E.2d 404 (1996). In *Jamerson,* the Georgia court found unambiguous a provision excluding personal liability coverage to bodily injury sustained by the "'insured,'" with the insured defined as "'you and residents of your household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above.'" *Id.* at 405–06 (quoting the homeowner's policy at issue). The Georgia court further held that a child who "was in the care of a resident relative of the [insured's] household ... was an insured under the terms of the policy. Because [the child] was an insured, coverage did not extend to his death under the bodily injuries exclusion." *Id.* at 406. Apparently the parties did not contend that the exclusion was void as against public policy, and the Georgia Court of Appeals did not indicate anything to that effect; instead, the exclusion was enforced. *Id.*

### D.

■ The foregoing cases demonstrate that the great weight of authority appears to be directly contrary to Plaintiffs' contention that the public policy against intrafamily tort immunity renders the household exclusion void. We consider the Washington Supreme Court's decision in *Emerson* particularly persuasive because collusion had not been determined to be a sufficient concern to ban intrafamily suits in Washington, as was likewise found by our supreme court in *Tamashiro,* and yet *Emerson* upheld a household exclusion clause which had as its purpose the prevention of collusive suits by family members. Also, as similarly noted by the New Jersey appellate court in *Heling,* the Hawai'i cases refusing to recognize parent-child and interspousal immunity did not "purport[ ] to determine the scope of a contract between an insured and an insurer" but merely permitted suits between parents and children and between spouses. *Heling,* 520 N.W.2d at 851. We therefore must conclude that the allowance of intrafamily tort suits in Hawai'i does not constitute a public policy which may be used to invalidate household exclusion clauses such as the one at issue in Plaintiffs' homeowner's policy.

## VI.

To further support their argument that the household exclusion violates public policy, Plaintiffs rely on *Kaiama,* in which they claim the Hawai'i Supreme Court "expressly found that the [household] exclusion violates public policy." *Kaiama,* however, involved a similar exclusion in an *automobile* insurance policy, not a homeowner's insurance policy, and thus the public policy found to be violated in that case is not applicable to the household exclusion in Plaintiffs' homeowner's insurance policy.

### A.

In *Kaiama,* a child was killed in an automobile accident while she was a passenger in her grandfather's vehicle. *Kaiama,* 84 Hawai'i at 133, 930 P.2d at 1352. The child's mother requested and received bodily injury liability benefits from the grandfather's automobile insurer. *Id.* at 134, 930 P.2d at 1353. The child's mother also tendered a claim for UIM benefits to the insurer, but this claim was rejected on the ground that "the policy exclude[d] from the definition of 'underinsured motor vehicle' any vehicle '[o]wned by or furnished or available for the regular use of you or any *family member*' (the family member exclusion)." *Id.* (emphasis in original).

The supreme court affirmed that the "stated legislative purpose behind the UIM statute was that it be consistent with the overall intent of the no-fault law to provide speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost." *Id.* at 135, 930 P.2d at 1354 (internal quotation marks and citation omitted). It then held that the family member exclusion, which "permit[ted] insurers to deny UIM coverage to family members covered under the policy of a named insured[,]" was *"in derogation of the clear legislative intent and public policy in favor of making such coverage available to all uncompensated victims of negligent drivers* [.]" *Id.* at 136–37, 930 P.2d at 1355–56. Thus, the public policy violated by the family member exclusion was

the policy of compensating victims of negligent drivers.

### B.

The public policy underlying the UIM statute obviously does not extend to a household exclusion provision in a homeowner's insurance policy. We are aware of no statute in Hawai'i which substantively regulates the provision of homeowner's insurance, or which would evince a legislative intent to make coverage available for all uncompensated victims of negligent homeowners. Plaintiffs point to no case law which would indicate any such public policy.[11]

We observe that several jurisdictions have struck down household exclusions in automobile insurance policies for reasons similar to those expressed in *Kaiama,* but have upheld these exclusions in homeowner's insurance policies because of the different statutory treatment afforded the two kinds of policies. In *Emerson,* the insureds, like Plaintiffs, relied on an earlier Washington decision which had invalidated a household exclusion provision in an automobile insurance policy because it was found to be contrary to public policy. *Emerson,* 687 P.2d at 1142. The Washington Supreme Court dismissed this argument, noting that in the automobile insurance case, it was "specifically stated that [the] starting point for analyzing public policy was with the financial responsibility act" by which "the [Washington] Legislature ... demonstrated its intended policy of providing adequate compensation to those injured through the negligent use of this state's highways." *Id.* (internal quotation marks and citation omitted). The Washington court did not discern the existence of a similar policy for the victims of negligent homeowners and thus upheld the household exclusion in the homeowner's policy:

> While we are not unmindful that serious and costly accidents occur in the home, and that innocent victims may be left without meaningful compensation in the absence of insurance, we do not perceive the same policy of making insurance coverage available for those who suffer injury at the hands of their family members.

11. As we have explained, *supra* part V, we do not interpret the Hawai'i case law rejecting intrafamily tort immunity as broadly stating a public

level of concern [by courts and legislatures] for financial compensation by negligent homeowners as exists for negligent automobile owners and users.

*Id.* at 1143.

This rationale has been echoed in other states upholding household exclusions in homeowner's policies. *See, e.g., Clendening,* 150 Cal.App.3d at 44, 197 Cal.Rptr. 377 (observing that while automobile liability insurance provisions "were found to violate the *express public policy legislatively declared*" in California's automobile liability insurance statute, "[t]here is no similar legislative declaration covering homeowner insurers") (emphasis in original); *Hahn,* 547 N.E.2d at 1145 ("In the present case, there is no statute, and hence no public policy deriving from statute, which forbids the [household] exclusion in homeowner['s] insurance, an elective form of protection.") [12] (footnote omitted); *Foley,* 414 A.2d at 35 (noting the inapplicability of "cases involv[ing] automobile policies for which the [New Jersey] Legislature[,] establishing the public policy of [the state,] has provided for certain coverage" when, in contrast, "[t]here is no statutory requirement that an individual obtain a homeowner['s] policy"); *Neil,* 549 A.2d at 1306 ("Unlike the area of automobile insurance, which is legislatively regulated, there is no legislative enactment in Pennsylvania governing or requiring that insurance companies provide a specified level of insurance coverage to homeowners."); *Rich v. Allstate Ins. Co.,* 191 W.Va. 308, 445 S.E.2d 249, 251 (1994) ("The important distinction to recognize here is that the requirements for automobile insurance are dictated by statute.

There is no legislative declaration regarding the requirements of homeowner's insurance coverage."); *cf. Heling,* 520 N.W.2d at 854 (upholding a spousal exclusion in an aircraft liability policy in part because "the public policy expressed in ... [North Dakota's] motor vehicle financial responsibility laws is inapplicable" where there was no "state statute that expressly require[d] coverage for persons injured in an aviation accident").

Finding these cases persuasive, we therefore cannot conclude that the decision in *Kaiama* requires us to invalidate the household exclusion at issue.

### VII.

As we have said, Plaintiffs additionally maintain that "State Farm's 'household exclusion' should be declared void as against public policy as it would deprive [Plaintiffs] the defense which they could not afford to pay on their own and which they thought they had provided for when they bought their policy of insurance from State Farm." While we are not unmindful of the compelling nature of this assertion, given the clear and unambiguous nature of the household exclusion, which Plaintiffs apparently concede, we cannot accept this argument.

### A.

The Hawai'i Supreme Court has stated that "it is committed to enforc[ing] the objectively reasonable expectations of parties claiming coverage under insurance contracts, which are construed in accord with the reasonable expectations of a layperson." *Hawaiian Ins. & Guar. Co. v. Financial Securi-*

---

**12.** The Massachusetts Appeals Court concluded that it was not its role, without any legislative direction in the area, to invalidate the household exclusion in a homeowner's insurance policy:

It may be that there is nothing to the possible apprehension of insurers about the scope and profusion of intrafamily claims or the difficulties they would experience in defending against them, and that, in an enlightened view, homeowner['s] policies ought to be shorn of the household exclusion, or customers should be provided with a clear choice between that kind of contract and one that carries the exclusion. What would in fact be the added exposure, were the exclusion to be scuttled, and with what practical effect on premiums? We

do not know and cannot estimate.... We are persuaded in the present circumstances that a court should not proceed to act on a supposed public policy not announced by the [Massachusetts] Legislature, nor self obviously [sic] compelling.

*Hahn v. Berkshire Mut. Ins. Co.,* 28 Mass.App.Ct. 181, 547 N.E.2d 1144, 1146 (1989) (footnote omitted). *See also Principal Cas. Ins. Co. v. Blair,* 500 N.W.2d 67, 69 (Iowa 1993) (rejecting the argument that a household exclusion provision in a homeowner's insurance policy contravened public policy because few insurers offered policies without such an exclusion, and remarking that "[w]e believe that this a policy decision for the legislature, not the judiciary").

*ty Ins. Co.,* 72 Haw. 80, 87–88, 807 P.2d 1256, 1259–60 (internal quotation marks and citations omitted), *reconsideration denied,* 72 Haw. 616, 841 P.2d 1074 (1991). Additionally, it has been said that "the objectively reasonable expectations of policyholders ... regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Hawaiian Ins. & Guar. Co. v. Brooks,* 67 Haw. 285, 291, 686 P.2d 23, 26–27 (1984) (internal quotation marks, citation, brackets, and footnote omitted).

In *Methven–Abreu v. Hawaiian Ins. & Guar. Co.,* 73 Haw. 385, 834 P.2d 279, *reconsideration denied,* 73 Haw. 625, 838 P.2d 860 (1992), the supreme court considered the objective reasonableness of an insured's spouse's alleged expectation of coverage in the face of the following automobile insurance policy exclusion: "We do not provide No–Fault Benefits ... for accidental harm sustained by any relative while occupying a motor vehicle which is owned by such relative and for which the security required by the [Hawai'i] No–Fault Law is not in effect." *Id.* at 390, 834 P.2d at 282–83 (emphases omitted). The automobile insurance policy at issue defined "relative" to "include[ ] the spouse of the named insured residing in the same household." *Id.* After reviewing the insurance policy's definitions of "relative," "accidental harm," "occupying," "motor vehicle," and "owned by," the supreme court held that the insured's spouse did not have an objectively reasonable expectation of coverage:

> When applying these definitions to the policy exclusion, clearly [the insured's spouse] is precluded from recovering no-fault benefits under [the insured's automobile insurance] policy because she sustained bodily injury while occupying an uninsured vehicle she owned. *The language of the exclusion is plain and unambiguous and negates any claim that [the insured's spouse] had an objectively reasonable expectation of coverage.*

*Id.* at 390–91, 834 P.2d at 282–83 (internal quotation marks and citation omitted) (emphasis added).

**B.**

Given the plain and unambiguous language of the household exclusion provision and the definition of "insured" in the policy, we cannot conclude that it was "objectively reasonable" for Plaintiffs to have expected State Farm to provide a defense in this situation.

The personal liability coverage in the policy, set forth in Section II, Coverage L, requires the insurer to "provide a defense at [its] expense by counsel of [its] choice" "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which th[e] coverage applies, caused by an occurrence[.]" (Emphases omitted.) Immediately following the liability coverages set forth in Section II is a section entitled "Section II—Exclusions" under which it is stated that "Coverage L ... [does] not apply to" certain situations listed. It is clear from exclusion h, the household exclusion, that Coverage L, personal liability coverage, does not apply to "bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured." (Emphases omitted.) The definitions of policy terms are plainly set forth at the beginning of the policy, and in that section the term "insured" is defined as "you [i.e., the named insured] and, if residents of your household, ... your relatives[.]" These provisions when read together unequivocally indicate that neither personal liability coverage nor a defense by the insurer would be provided in a suit for bodily injury to the named insured and his or her relatives residing in his or her household. *See Neil,* 549 A.2d at 1310; *Emerson,* 687 P.2d at 1144–45.

More pertinent to Plaintiffs' contention, the household exclusion further explicitly states that it "also applies to any claim made or suit brought against any insured to share damages with or repay someone else who may be obligated to pay damages because of the bodily injury[.]" (Emphases omitted.) The third-party complaint, cross-claim, and counterclaim at issue in this case all sought contribution and/or indemnification from one or more insureds. The words "share damages with or repay someone else" plainly exclude claims or suits brought against an

insured for contribution and/or indemnification from coverage.

## C.

Holding that such household exclusions are clear and unambiguous, several courts have rejected an insured's contention that upholding the household exclusion would defeat the *reasonable expectations of the insured.* In *Emerson,* the Washington Supreme Court observed that "[a] casual glance through the pages of the policy should put a reader on notice that some exceptions to coverage were contained in the policy" and, furthermore, "[p]articularly in the absence of ambiguity, there is no reasonable expectation that no exemptions to coverage exist." *Emerson,* 687 P.2d at 1144. The Pennsylvania Superior Court in *Neil* recognized that "[t]he argument that an insured's reasonable expectations have been frustrated has been rejected where the provisions of a particular insurance policy are clear and unambiguous." *Neil,* 549 A.2d at 1309. *See also Heling,* 520 N.W.2d at 855 ("The doctrine of reasonable expectations ... is an interpretive tool in the construction of [ambiguous] contracts.").

In their reply brief, Plaintiffs contend that because the purpose of a household exclusion clause is to prevent collusion, they objectively and reasonably expected that "the policy would not be applicable where there was the possibility of collusion between family members in the award of damages" but that "a defense would be provided to [Plaintiffs] under [the policy] for claims made against them." In light of the language of the household exclusion which applies to claims made against Plaintiffs "to share damages with or repay someone else who may be obligated to pay damages because of the bodily injury" to an insured, we must conclude Plaintiffs' "expectation" of a defense involving such claims is not objectively reasonable.

## VIII.

Finally, Plaintiffs argue that "[i]n addition to being void as against public policy, [the household] exclusion is overly broad to exclude not only suits between family members but also suits between third[-]party defendants and family members." Assuming that we were to agree that the household exclusion is "overly broad" in this manner, Plaintiffs do not cite and we are not aware of any authority which would give us the power to invalidate an insurance contract provision on the ground that it is "overly broad" in its scope.[13]

We find instructive the following discussion of the effect of a household exclusion on a counterclaim against an insured's relative:

An exclusion from liability coverage for relatives or other residents of the insured household clearly prevents recovery for claims initiated by those within the designated categories. However, the issue of coverage for third-party claims for indemnity or contribution from an insured where a resident relative of the insured has sued the third party for personal injury is more controversial. Some authority holds that such counterclaims are within homeowner's coverage, reasoning that the issue in the counterclaim is not the insured's liability to his or her relative, but the insured's liability to the third party. Other courts reject this reasoning, holding to the view that such claims are derived solely from the bodily injury claim of the injured relative, and are, therefore, excluded from coverage. *The insurance industry has added the phrase 'we do not cover bodily injury to insured person ... whenever any benefit of this coverage would accrue directly or indirectly to insured person' in order to make explicit their [sic] intent to exclude from coverage such counterclaims.*

9 *Couch on Insurance 3d* § 128:4, at 128–9 to 128–10 (footnotes omitted) (emphasis added).

---

**13.** *Plaintiffs apparently base their contention on the fact that the purpose of a household exclusion clause is to prevent collusive suits between family members, and they argue that the danger of such collusion is small or nonexistent when an insured is merely seeking a defense against a* third-party complaint, cross-claim, or counterclaim. Again, even if we were to agree with this reasoning, we cannot invalidate the household exclusion merely because we disagree with the insurer's justification or need for it.

In this case, State Farm explicitly provided that the household exclusion "also applies to any claim made or suit brought against any insured to *share damages with or repay someone else who may be obligated to pay damages because of the bodily injury* [.]" (Emphasis added; other emphases omitted.) As discussed above, this language unambiguously excludes coverage for third-party claims, cross-claims, or counterclaims for contribution and/or indemnification against an insured.

The case cited by *Couch on Insurance 3d* for the proposition that counterclaims are within homeowner's coverage is *Allstate Ins. Co. v. Pestar*, 168 A.D.2d 931, 564 N.Y.S.2d 892 (N.Y.App.Div.1990) (memorandum opinion). In *Pestar*, the New York appellate court noted that "[a]lthough the [homeowner's] policy specifically excludes coverage for bodily injuries sustained by an injured person, . . . the liability at issue on the [third party's] counterclaim is not the parents' liability to [their daughter] but rather the parents' potential liability to the [third party] on a claim of equitable apportionment." *Id.* at 893. The New York court therefore held that the homeowner's insurer "ha[d] a duty to defend and indemnify the parents with respect to the [third party's] counterclaim." *Id.* (citations omitted).

The policy exclusion relied on by the insurer in *Pestar* was not set out in full in the opinion. However, we have reason to believe that the exclusion may not have contained language similar to the "share damages with or repay" language in the instant policy. In a more recent opinion that cited *Pestar*, it was again held that "[n]otwithstanding that the underlying incident resulted in injury to the plaintiff's husband and that he qualifies as an insured under the [homeowner's] policy, the policy exclusion does not exclude [the] third-party claims for indemnification in a third-party action arising from the same injury." *Doyle v. Pawtucket Mut. Ins. Co.*, 243 A.D.2d 603, 667 N.Y.S.2d 755, 756 (1997) (memorandum opinion) (citations omitted).

Interestingly, the New York court explained that the insured's reliance on *Commissioners of State Ins. Fund v. Insurance Co. of N. Am.*, 80 N.Y.2d 992, 592 N.Y.S.2d 648, 607 N.E.2d 795 (1992) was "misplaced" because that case involved a "broadly[-]worded" exclusion:

> In that case, the policy exclusion was broadly worded to exclude all claims arising from bodily injuries to employees and thus the employer's claim for indemnification against a third-party claim fell within the exclusion. *Here, however, the relevant provision is narrowly drafted to exclude from coverage only direct claims of bodily injury by insureds. As such, it does not clearly and unmistakably exclude the defense and indemnification of third-party claims, even where they arise as a result of an injury to an insured.*

*Doyle*, 667 N.Y.S.2d at 756 (citations omitted) (emphasis added). Again, the household exclusion at issue in the instant case is "broadly worded" and "clearly and unmistakably exclude[s] the defense and indemnification of third-party claims [for contribution and/or indemnification], even where they arise as a result of an injury to an insured." *Id.* Accordingly, we cannot invalidate it, as it does not appear to contravene any statute or public policy.[14]

## IX.

For the foregoing reasons, we hold the court was right and affirm the December 5, 1996 order granting State Farm's motion for summary judgment and the June 5, 1997 final judgment entered in favor of State Farm.

---

**14.** Given our disposition, we need not reach the questions of whether Plaintiffs in fact tendered a defense of the cross-claim to State Farm, and, if so, whether this tender of defense was denied. *See supra* note 2 and accompanying text.